UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| TERRY PEPPER,<br><br>                    Plaintiff,<br><br>v.<br><br>LIFE PROTECT 24/7, INC., d/b/a<br>LIFE PROTECT 24/7,<br><br>                    Defendant. | Case No.: 4:20-cv-02154 |

## MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendant Life Protect 24/7, Inc. ("Life Protect") respectfully moves this Court to dismiss Plaintiff's Complaint (Dkt. 1) under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) ("Motion"). In support of this Motion, Defendant relies on its Memorandum in Support of Motion to Dismiss Plaintiff's Complaint set forth as follows:

1

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

NATURE AND STAGE OF THE PROCEEDING ............................................... 2

STATEMENT OF ISSUES AND STANDARD OF REVIEW ............................. 3

    I.    Whether Plaintiff Lacks Article III Standing Requiring Dismissal under Rule 12(b)(1) for Lack of Subject Matter Jurisdiction ......................... 3

    II.    Whether Plaintiff has Failed to State a Claim for Relief Requiring Dismissal under Rule 12(b)(6) ............................................................... 4

ARGUMENT ...................................................................................................... 5

    I.    Rule 12(b)(1) Challenge—Plaintiff Lacks Article III Standing ........... 5

        A.    Summary of Argument ............................................................. 5

        B.    Plaintiff's Injuries (If Any) Are Not Fairly Traceable to Life Protect .................................................................................... 5

        C.    Plaintiff Has Not Alleged that She Suffered an Injury-In-Fact ................ 6

    II.    Rule 12(b)(6) Challenge—Plaintiff Fails to State a Claim for Relief ................ 10

        A.    Summary of Argument ........................................................... 10

        B.    All of Plaintiff's Claims Fail Because She Does Not Plausibly Allege that Life Protect Made or Initiated Any Calls to Her. .................. 11

        C.    Count I Fails Because Plaintiff Does Not Plausibly Allege that Any Calls She Received Were Made Using an ATDS ................................... 12

            i.    An ATDS includes only devices capable of randomly or sequentially generating numbers to be called ............................. 12

            ii.    Plaintiff fails to plausibly allege that the dialing technology from which she received the calls was an ATDS ........................ 15

        D.    Count II Fails Because Plaintiff Does Not Plausibly Allege She Received Multiple Telephone Solicitations Within a Twelve-Month Period ....................................................................... 16

        E.    Count III Fails Because Plaintiff Does Not Plausibly Allege More than $50,000 in Actual Damages. ............................................ 18

        F.    Count IV Fails Because Plaintiff Does Not Plausibly Allege the Elements of a Claim Under § 302.101 of the Texas Business and Commerce Code .................................................................. 19

CONCLUSION .................................................................................................. 20

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*ACA Int'l v. FCC*,
    885 F.3d 687 (D.C. Cir. 2018) ............................................................................12

*Adams v. Safe Home Sec. Inc.*,
    No. 3:18-cv-03098-M, 2019 U.S. Dist. LEXIS 126522 (N.D. Tex. July 30,
    2019) ..................................................................................................................14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2008) .............................................................................................4

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .............................................................................................4

*Bruni v. Hughs*,
    No. 5:20-CV-35, 2020 U.S. Dist. LEXIS 111562 (S.D. Tex. June 24, 2020) .........................3

*Cranor v. 5 Star Nutrition, LLC*,
    No. 1-19-CV-908-LY, 2019 U.S. Dist. LEXIS 230025 (W.D. Tex. Nov. 27,
    2019) ....................................................................................................................7

*Cunningham v. Nationwide Sec. Sols., Inc.*,
    No. 3:17-CV-00337-M, 2017 U.S. Dist. LEXIS 223796 (N.D. Tex. Nov. 2,
    2017) ..................................................................................................................15

*Cunningham v. TechStorm, LLC*,
    No. 3:16-CV-2879, 2018 U.S. Dist. LEXIS 105774 (N.D. Tex. May 29, 2018) ...................12

*Cunningham v. Techstorm, LLC*,
    No. 3:16-CV-2879-M, 2017 U.S. Dist. LEXIS 25047 (N.D. Tex. Feb. 23,
    2017) ..................................................................................................................15

*Duguid v. Facebook, Inc.*,
    926 F.3d 1146 (9th Cir. 2019), *cert granted Facebook, Inc. v. Duguid*, Docket
    No. 19-511 ..........................................................................................................12

*Duran v. La Boom Disco, Inc.*,
    955 F.3d 279 (2nd Cir. 2020) .............................................................................14

*Eldridge v. Pet Supermarket, Inc.*,
    No. 18-22531-CIV-WILLIAMS, 2020 U.S. Dist. LEXIS 56222 (S.D. Fla.
    Mar. 9, 2020) ........................................................................................................8

*Friends of Lydia Ann Channel v. United States Army Corps of Eng'rs*,
No. 2:15-CV-514, 2016 U.S. Dist. LEXIS 161688 (S.D. Tex. Nov. 22, 2016) ......................5

*FW/PBS, Inc. v. Dallas*,
493 U.S. 215 (1990)................................................................................................3, 4

*Gadelhak v. AT&T Servs.*,
950 F.3d 458 (7th Cir. 2020) ................................................................................13

*Glasser v. Hilton Grand Vacations Co., LLC*,
948 F.3d 1301 (11th Cir. 2020) ......................................................................13, 15

*High v. Karbhari*,
774 F. App'x. 180 (5th Cir. 2019) ........................................................................5

*Dominguez ex. rel Himself v. Yahoo, Inc.*,
894 F.3d 116 (3rd Cir. 2018) ..............................................................................13

*Lone Star Fund V (US), LP v. Barclays Bank PLC*,
594 F.3d 383 (5th Cir. 2010) ................................................................................4

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)..............................................................................................6

*Marks v. Crunch San Diego, LLC*,
904 F.3d 1041 (9th Cir. 2018) ..............................................................................14

*McDermet v. Heath*,
No. 17-12327-FDS, 2018 U.S. Dist. LEXIS 14735 (D. Mass. Jan. 30, 2018) ......................18

*McMahon v. Fenves*,
946 F.3d 266 (5th Cir. 2020) ................................................................................3

*McNutt v. General Motors Acceptance Corp.*,
298 U.S. 178 (1936)..............................................................................................4

*Morris v. Copart*,
No. 4:15-CV-724, 2016 U.S. Dist. LEXIS 155755 (E.D. Tex. Nov. 9, 2016) ......................16

*Neria v. Dish Network L.L.C.*,
No. 6:19-CV-00430-ADA-JCM, 2020 U.S. Dist. LEXIS 108169 (W.D. Tex.
June 19, 2020)......................................................................................................11

*Physician Hosps. of Am. v. Sebelius*,
691 F.3d 649 (5th Cir. 2012) ................................................................................3

*Plotkin v. IP Axess Inc., Etc.*,
407 F.3d 690 (5th Cir. 2005) ................................................................................4

*Raines v. Byrd*,
521 U.S. 811 (1997) .................................................................................................6

*Reed v. Quicken Loans, Inc.*,
No. 3:18-cv-3377-K, 2019 U.S. Dist. LEXIS 159935 (N.D. Tex. Sept. 3,
2019) ......................................................................................................................15

*Salcedo v. Hanna*,
936 F.3d 1162 (11th Cir. 2019) .............................................................................7, 8

*Sartin v. EKF Diagnostics, Inc.*,
No: 16-1816 Section: R, 2016 U.S. Dist. LEXIS 86777 (E.D. La. July 5,
2016) .....................................................................................................................6, 7

*Shostack v. Diller*,
15-CV-2255 (GBD) (JLC), 2015 U.S. Dist. LEXIS 123777 (S.D.N.Y. Sept.
16, 2015) .................................................................................................................18

*Shuckett v. DialAmerica Mktg*,
No. 17cv2073-LAB (KSC), 2019 U.S. Dist. LEXIS 127049 (S.D. Cal. July
29, 2019) ...............................................................................................................8, 9

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016) .........................................................................................6, 10

*Strange v. Doe*,
No. 19-1096, 2020 U.S. Dist. LEXIS 84761 (W.D. La. May 12, 2020) .................17

*Suttles v. Facebook, Inc.*,
No. 1:18-CV-1004-LY, 2020 U.S. Dist. LEXIS 90026 (W.D. Tex. May 20,
2020) .........................................................................................................14, 15, 16

*The Inclusive Cmtys. Project, Inc. v. Dep't of Treasury*,
946 F.3d 649 (5th Cir. 2019) ..................................................................................5

*We-Flex, LLC v. NBSP, Inc.*,
No. H-11-1078, 2012 U.S. Dist. LEXIS 58154 (S.D. Tex. Apr. 25, 2012)..............4

**Statutes**

15 U.S.C. § 6102(a)(1)..............................................................................................18

15 U.S.C. § 6104(a) ..................................................................................................18

47 U.S.C. § 227(a)(1)(A)-(B) ...................................................................................12

47 U.S.C. § 227(a)(4)................................................................................................16

47 U.S.C. § 227(b) ........................................................................................12, 16, 17

47 U.S.C. § 227(b)(1)(A)(iii) ........................................................................3, 11, 12, 15

47 U.S.C. § 227(c) ......................................................................................3, 16, 17

47 U.S.C. § 227(c)(5) ...............................................................................11, 16, 17

Tex. Bus. & Com. § 302.100(3) .............................................................................19

Tex. Bus. & Com. § 302.100(5) .............................................................................19

Tex. Bus. & Com. § 302.100(7) .............................................................................19

Tex. Bus. & Com. § 302.101 ...................................................................3, 11, 19

**Other Authorities**

16 C.F.R. § 310.4(b)(1)(iii) ......................................................................3, 11, 18

47 C.F.R. § 64.1200(c)(2) .....................................................................................11, 16

47 C.F.R. § 64.1200(f)(14) ....................................................................................16

Fed. R. Civ. P. 8 .......................................................................................................1

Fed. R. Civ. P. 12(b)(1) ...............................................................................3, 5, 7

Fed. R. Civ. P. 12(b)(6) ....................................................................................4, 10

Fed. R. Civ. P. 26(f) .................................................................................................2

*Initiate*, Merriam-Webster.com Dictionary, https://www.merriam-
webster.com/dictionary/initiate (last accessed July 20, 2020)...................................11

*Make*, Merriam-Webster.com Dictionary, https://www.merriam-
webster.com/dictionary/make (last accessed July 20, 2020) ...................................11

*P2P Alliance Petition for Clarification,* DA-20-670, ¶ 8 (2020) ...........................13, 14

## <u>INTRODUCTION</u>

Plaintiff's Complaint falls far short of satisfying Rule 8's plausibility standard. The Complaint contains almost no specific, well-pled factual averments but, instead, is a collection of threadbare, conclusory assertions and legal conclusions. Thus, each of Plaintiff's four causes of action against Life Protect fails on its face.

Plaintiff's allegations can be summarized as follows: Plaintiff received an unspecified number of calls from Life Protect to her cellular telephone—which is listed on the national Do-Not-Call registry—that she did not consent to receiving. Tellingly, Plaintiff fails to allege basic and essential details about the purported calls. In particular, Plaintiff does not allege any factual basis for her factual and legal conclusions that Life Protect made the outbound calls at issue, that the calls were made using an autodialer, or that the calls were solicitations to purchase goods or services—nor could she. Although Plaintiff does not allege she answered any of the calls or that the caller left a voice message, she nonetheless pins Life Protect as the maker of the calls. How does Plaintiff know Life Protect made autodialed telephone solicitations to her phone? She fails to specify.

At bottom, the Complaint is fatally vague and should be dismissed for two reasons. First, Plaintiff does not meet her burden to allege that she has Article III standing, and therefore, this Court lacks subject matter jurisdiction over the action. There are no plausible allegations that Life Protect made any calls to Plaintiff, and she has not alleged concrete harm sufficient to satisfy the injury-in-fact requirement. Second, Plaintiff fails to state a claim for relief on any of her four claims. Plaintiff does not plausibly allege Life Protect made the calls at issue, does not plausibly allege the use of an autodialer, and does not plausibly allege any of the calls she received contained marketing or advertising. Taken alone or together, these deficiencies command dismissal.

1

## NATURE AND STAGE OF THE PROCEEDING

Plaintiff filed her Complaint on June 18, 2020, (Dkt. 1), and Life Protect was served with the Summons and Complaint on July 2, 2020. (Dkt. 6). Life Protect files this Motion to Dismiss in response to the Complaint. No discovery has occurred in this action, and the parties have not yet held a Rule 26(f) conference.

Plaintiff is an individual residing in the Woodlands, Texas, who owns a cellular phone. (Compl. ¶¶ 5, 10–11).[1] Plaintiff alleges that, beginning in or around January 2020, she received an unspecified number of calls to her cellular phone for solicitation purposes, which she claims were made by Life Protect. (Compl. ¶ 12).[2] Plaintiff avers that her telephone number is on the national Do-Not-Call (the "National DNC") registry and that the calls were not otherwise made with her prior express consent or at her request. (Compl. ¶¶ 13–14). Plaintiff's only purported harm is that she found the calls to be "bothersome, disruptive and frustrating." (Compl. ¶ 16).

Conspicuously absent, however, are critical details supporting how she knows that Life Protect was the caller, as she does not allege that she answered the calls or that the caller left a message. (*See generally*, Compl.). Plaintiff omits key details such as how many calls she received in total and how many of these calls were for solicitation purposes. (*See generally*, Compl.). Plaintiff claims that the calls were made using an Automatic Telephone Dialing System ("ATDS" or "autodialer")—a specific type of dialing technology prohibited under the Telephone Consumer Protection Act ("TCPA")—but omits any supporting allegations for her assertion. (Compl. ¶ 23).[3]

---

[1] Life Protect accepts as true Plaintiff's well-pled factual averments solely for the purpose of this Motion.
[2] Life Protect denies that it made any calls or that it makes outbound telephone calls to encourage purchases by consumers.
[3] The Complaint contains two paragraphs numbered 23. This citation refers to the first Paragraph 23.

Based on these meager and largely conclusory allegations, Plaintiff brings four causes of action against Life Protect:

- Count I—violations of the TCPA's autodialer restrictions, 47 U.S.C. § 227(b)(1)(A)(iii);

- Count II—violations of the TCPA's National DNC restrictions, 47 U.S.C. § 227(c);

- Count III—violations of the federal Telemarketing Sales Rule ("TSR"), 16 C.F.R. § 310.4(b)(1)(iii)(B); and

- Count IV—violations of Section 302.101 of the Texas Business and Commerce Code. (Compl. at  3–5).

## STATEMENT OF ISSUES AND STANDARD OF REVIEW

**I.      Whether Plaintiff Lacks Article III Standing Requiring Dismissal under Rule 12(b)(1) for Lack of Subject Matter Jurisdiction.**

*This Court must decide whether it has subject matter jurisdiction over this action.* The plaintiff has the burden of demonstrating that a court has subject matter jurisdiction. *McMahon v. Fenves*, 946 F.3d 266, 271 (5th Cir. 2020). At the pleading stage, "the plaintiffs' burden is to allege a plausible set of facts establishing jurisdiction." *Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 652 (5th Cir. 2012).

Article III standing is a threshold component of subject matter jurisdiction for which the plaintiff bears the burden. *See, e.g., Bruni v. Hughs*, No. 5:20-CV-35, 2020 U.S. Dist. LEXIS 111562, at *10–11 (S.D. Tex. June 24, 2020). To meet this burden, the plaintiff must provide well-pled factual allegations that the defendant engaged in conduct that caused the plaintiff's harm. *Id*. Indeed, "standing cannot be inferred argumentatively from averments in the pleadings, but rather must affirmatively appear in the [pleading]." *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990) (internal citations and quotations omitted). In short, the plaintiff must "'***allege*** . . . ***facts essential to show jurisdiction***. If [they] fail to make the necessary allegations, [they have]

3

no standing.'" *Id.* (quoting *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936) (emphasis added)).

II. **Whether Plaintiff has Failed to State a Claim for Relief Requiring Dismissal under Rule 12(b)(6).**

*This Court must decide whether Plaintiff has stated a claim for relief.* "The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when ***all well-pleaded facts*** are assumed true and are viewed in the light most favorable to the plaintiff." *Lone Star Fund V (US), LP v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (emphasis added). To that end, courts "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc., Etc.*, 407 F.3d 690, 696 (5th Cir. 2005). Thus, a complaint "must include sufficient facts to indicate the facial plausibility of the claims asserted, raising the 'right to relief above the speculative level.'" *We-Flex, LLC v. NBSP, Inc.*, No. H-11-1078, 2012 U.S. Dist. LEXIS 58154, at *10 (S.D. Tex. Apr. 25, 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007)).

In the Rule 12(b)(6) context, "[p]lausibility means that the factual content 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2008)). "Although specifics are not necessary, a complaint must contain enough facts to nudge the claims 'across the line from conceivable to plausible.' In other words, the factual allegations must allow for an inference of '***more than a sheer possibility that a defendant has acted unlawfully***.'" *Id.* (emphasis added) (internal citations omitted).

4

## ARGUMENT

I.      **Rule 12(b)(1) Challenge—Plaintiff Lacks Article III Standing.**

A.      **Summary of Argument.**

The Complaint should be dismissed in its entirety with prejudice because Plaintiff lacks standing. To establish standing, Plaintiff must plausibly allege the following three elements: "(1) an injury in fact that is (a) concrete and particularized and (b) actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) the likelihood that a favorable decision will redress the injury." *Friends of Lydia Ann Channel v. United States Army Corps of Eng'rs*, No. 2:15-CV-514, 2016 U.S. Dist. LEXIS 161688, at *5 (S.D. Tex. Nov. 22, 2016). Here, Plaintiff fails to allege facts sufficient to support an inference that Life Protect called her, meaning that her injuries, if any, are not fairly traceable to Life Protect. In addition, Plaintiff fails to allege that she has suffered a concrete, personal injury.

B.      **Plaintiff's Injuries (If Any) Are Not Fairly Traceable to Life Protect.**

Because Plaintiff does not plausibly allege facts supporting an inference that Life Protect was the caller, the calls she supposedly received are not traceable to Life Protect, and thus, she lacks standing. To satisfy the second element of the standing inquiry, the injury must be fairly traceable to specific misconduct engaged in by a specific defendant. *See High v. Karbhari*, 774 F. App'x. 180, 183 (5th Cir. 2019) (finding that a plaintiff did not allege that his claims were traceable to the conduct of two defendants when the plaintiff failed to name either of the defendants in the complaint). At the pleading stage, the plaintiff must sufficiently allege—with well-pled factual averments—that it was ***the defendant's conduct*** that caused the plaintiff's harm. *See The Inclusive Cmtys. Project, Inc. v. Dep't of Treasury*, 946 F.3d 649, 655 (5th Cir. 2019) (explaining that the plaintiff's burden is to allege a plausible causal link between the defendant's conduct and the plaintiff's harm).

5

Here, there is no basis from the Complaint to conclude that Life Protect made any calls to Plaintiff. Plaintiff does not plead that she answered any of the calls, that the caller identified itself by leaving a voicemail, or any other factual circumstances supporting an inference that the calls were made by Life Protect. (*See generally*, Compl.). Indeed, Plaintiff offers ***no facts*** supporting her identification of Life Protect as the caller. To be sure, the only connection between Life Protect and the calls allegedly made to Plaintiff is that Plaintiff names Life Protect as the defendant in this lawsuit. This is not enough for standing purposes. Thus, the Complaint must be dismissed in its entirety because Plaintiff failed to plausibly allege that her injuries (if any) are traceable to Life Protect.

### C.   Plaintiff Has Not Alleged that She Suffered an Injury-In-Fact.

Plaintiff has not alleged that she suffered an injury-in-fact because her injuries, if any, are not concrete as required by Article III. Standing requires an actual and imminent injury that is concrete and particularized. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-560 (1992). While Congress may create a private right of action for a statutory violation, "Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Raines v. Byrd*, 521 U.S. 811, at 820, n. 3 (1997). That is, even in the context of a statutory violation, a Plaintiff ***must allege some concrete, personal harm***. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) ("Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.").

Under the TCPA, it is not enough to merely allege that the defendant violated the TCPA to confer standing. *Sartin v. EKF Diagnostics, Inc.,* No: 16-1816 Section: R, 2016 U.S. Dist. LEXIS 86777, at *8 (E.D. La. July 5, 2016). For example, in *Sartin*, the plaintiff alleged that he

was a recipient of a single junk fax as part of the defendant's junk fax campaign in violation of the TCPA; his purported injuries were only "statutory damages, in addition to actual damages, including but not limited to those contemplated by Congress and the [Federal Communications Commission]." *Id*. at *8. The court determined the plaintiff lacked standing because his "vague reference to Congress and the FCC provides no factual material from which the Court can reasonably infer what specific injury, if any, [plaintiff] sustained through defendants' alleged statutory violations." *Id*. at *9.

Additionally, the Eleventh Circuit recently ruled that a single text message in violation of the TCPA is insufficient to confer standing. *See Salcedo v. Hanna*, 936 F.3d 1162, 1172–73 (11th Cir. 2019). In *Salcedo*, the Eleventh Circuit noted that—in the context of the TCPA—an inquiry as to the injury suffered by the plaintiff is fact-dependent but held that simply alleging that the defendant violated the TCPA in a single instance by sending a single text message to the plaintiff is insufficient to plausibly allege concrete harm. *Id*. at 1167–68. Ultimately, the plaintiff in *Salcedo* lacked standing because by merely alleging that he received one text message in violation of the TCPA (which he alleged wasted his time in reading it), his injury was not concrete. *Id*. at 1173. To wit, the Fifth Circuit has not addressed *Salcedo*, but the only sister district court in the Circuit to address *Salcedo* agreed with its central holding and reasoning in finding that receiving a single, unwanted text message in violation of the TCPA was not a concrete injury. *See Cranor v. 5 Star Nutrition, LLC*, No. 1-19-CV-908-LY, 2019 U.S. Dist. LEXIS 230025, at *6–10 (W.D. Tex. Nov. 27, 2019) (adopting *Salcedo*'s holding and dismissing the complaint with prejudice under Rule 12(b)(1)).

Other federal district courts have extended the *Salcedo* holding or applied similar reasoning to dismiss TCPA claims on standing grounds when the plaintiff alleges minimal harm,

even if she received multiple messages in violation of the TCPA. *See generally*, *Eldridge v. Pet Supermarket, Inc.*, No. 18-22531-CIV-WILLIAMS, 2020 U.S. Dist. LEXIS 56222 (S.D. Fla. Mar. 9, 2020) (finding that receiving five short marketing texts failed to confer standing when the plaintiff alleged nuisance and consumption of phone battery because such allegations only evinced that the plaintiff suffered a minimal and a non-concrete intrusion of privacy or waste of time); *Shuckett v. DialAmerica Mktg*, No. 17cv2073-LAB (KSC), 2019 U.S. Dist. LEXIS 127049 (S.D. Cal. July 29, 2019) (allegations of a missed call is insufficient to confer standing if the plaintiff fails to allege supporting facts that she noticed the calls).

Here, therefore, Plaintiff's burden is to plausibly allege that she received multiple calls in violation of the TCPA, TSR, and the Texas Business and Commerce Code that caused Plaintiff some form of concrete harm beyond simply noticing that she received a missed call sometime after-the-fact. *See Salcedo*, 936 F.3d at 1172. ("The chirp, buzz, or blink of a cell phone receiving a single text message is more akin to walking down a busy sidewalk and having a flyer briefly waived in one's face. Annoying, perhaps, but not a basis for invoking the jurisdiction of the federal courts."). Plaintiff fails to meet her burden.

Indeed, although Plaintiff baldly avers that Life Protect called her repeatedly, (Compl. ¶ 12), she does not allege how many of these calls violated the statutes and regulations at issue. (*See generally*, Compl.). Not all unwanted calls violate the TCPA, TSR, or the Texas Business and Commerce Code. As to Count I, only calls made to a cell phone with an autodialer violate the TCPA's autodialing prohibitions; yet, Plaintiff does not allege how many calls she received from an autodialer. (*See generally*, Compl.). As to Counts II, III, and IV, only calls that contain a statutorily-defined "telephone solicitation" are actionable; yet, Plaintiff does not allege how many calls contained a telephone solicitation. (*See generally*, Compl.). Therefore, it remains

8

equally plausible that she received only one call (or none) placed by an ATDS or only one call (or none) involving a telephone solicitation—which is insufficient to confer standing.

Further, Plaintiff's lone allegation of harm—that the calls were bothersome, disruptive, or frustrating—is not sufficient to allege that she suffered a concrete injury. This is especially true given that Plaintiff does not even allege that she answered any call or that the caller left a voicemail. By Plaintiff's own allegations, it appears that she noticed the calls in the form of missed calls on her cell phone sometime after they occurred. As explained in *Shuckett*, looking at one's phone and noticing a missed call at some time after the call occurred is not sufficient to confer standing. Indeed, like those claims dismissed in *Shuckett*, this Court lacks critical details necessary to establish that Plaintiff suffered a concrete injury, such as: whether the phone was in Plaintiff's possession when she received the alleged calls; whether Plaintiff was aware of the calls contemporaneously as they were received; the length of any of the calls, etc. In sum, Plaintiff's alleged "injuries" that the unspecified number of calls bothered, disturbed, and frustrated her are not concrete enough for standing.

Lastly, Plaintiff's lack of standing is especially glaring with respect to her claim under the Texas Business and Commerce Code. It is unclear, in any respect, that she suffered concrete harm as a result of Life Protect's supposed failure to register as a telemarketer. Assuming *arguendo* that Life Protect was the caller (which it was not) and lacked a registration in violation of the statute, it is also true that had Life Protect obtained the requisite license, it would have still made these same calls allegedly. Put differently, Plaintiff would have received the calls regardless of whether the caller violated the Texas Business and Commerce Code. Consequently, whether the caller was appropriately registered is immaterial to this dispute and to Plaintiff's alleged injuries of bother, disruption, and frustration. In essence, Plaintiff is suing to enforce a

state registration requirement in which she has no tangible stake and from which suffers no concrete harm for a violation thereof. In that sense, she is suing to enforce a procedural violation, which is insufficient to confer standing under *Spokeo*.

Plaintiff has not alleged—as she must—"facts essential" to demonstrate that she has suffered an injury-in-fact. Accordingly, her Complaint must be dismissed for lack of standing.

## II.    Rule 12(b)(6) Challenge—Plaintiff Fails to State a Claim for Relief.

### A.    Summary of Argument.

Beyond Plaintiff's failure to adequately allege that she has standing, Plaintiff fails to state a claim for relief on any of her four causes of action. As detailed below, the common thread through Plaintiff's Complaint—and by virtue, this Motion—is that she offers only conclusory allegations in support of her claims. Stripped of these conclusions, as the Court must in reviewing the sufficiency of the pleading, the Complaint fails as a matter of law.

All four of Plaintiff's claims fail for similar reasons to why her harms, if any, are not traceable to Life Protect: *Plaintiff fails to plausibly allege that Life Protect "initiated" or "made" the calls to her*. Further, Plaintiff's two TCPA claims fail because Plaintiff does not allege (1) facts supporting an inference that calls to her were made using an autodialer, and (2) facts supporting an inference that at least two of the calls involved telephone solicitations in violation of the National DNC regulations. Further, Plaintiff's claim under the TSR fails because she does not allege that she suffered above $50,000 in actual damages, meaning that she has no private right of action. Finally, Plaintiff's claim under the Texas Business and Commerce Code fails because neither she nor Life Protect meets certain necessary statutory definitions as alleged.

**B.      All of Plaintiff's Claims Fail Because She Does Not Plausibly Allege that Life Protect Made or Initiated Any Calls to Her.**

Plaintiff's claims fail because she does not plausibly allege that Life Protect was the caller. All of her claims hinge on alleging facts sufficient to support a more-than-speculative inference that Life Protect actually initiated or made the calls at issue. *See* 47 U.S.C. § 227(b)(1)(A)(iii) (rendering it unlawful to "make any call" to a cell phone using an ATDS; 47 U.S.C. § 227(c)(5) (making it unlawful under 47 CFR § 64.1200(c)(2) to "initiate any telephone solicitation" to a residential telephone on the National DNC); 16 CFR § 310.4(b)(1)(iii)(B) (prohibiting "initiating any outbound telephone call" to a person on the National DNC); Texas Bus. & Com. § 302.101 (prohibiting sellers from "mak[ing] . . . a telephone solicitation to a purchaser located in this state" without registering). Thus, among other elements, to state a viable claim under any of these laws, a plaintiff must sufficiently allege that the defendant was the caller. *See, e.g.*, *Neria v. Dish Network L.L.C.*, No. 6:19-CV-00430-ADA-JCM, 2020 U.S. Dist. LEXIS 108169, at *9 (W.D. Tex. June 19, 2020) ("[a] plaintiff asserting a claim under the TCPA must prove: (1) defendant ***made a call to a cellular telephone*** . . ." (emphasis added)).[4] Here, for the same reasons argued in *supra*, section I.A., Plaintiff does not plausibly allege that Life Protect was in fact the caller. For this reason alone, her claims all fail and must be dismissed.

---

[4] Undersigned counsel has not been able to locate an interpretation of "initiating" as used in the TSR, or the term "making" in the Texas Business and Commerce Code. However, these terms should be read in accordance with their plain meaning. Initiate is defined by Merriam Webster as "to cause or facilitate the beginning of." *Initiate*, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/initiate (last accessed July 20, 2020). "Make" is defined as "to bring into being[.]" *Make*, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/make (last accessed July 20, 2020) Thus, "initiating" a call under the TSR or "making" a call under Texas law would be interpreted the same as the TCPA—to cause the call to occur.

C.   **Count I Fails Because Plaintiff Does Not Plausibly Allege that Any Calls She Received Were Made Using an ATDS.**

i.   **An ATDS includes only devices capable of randomly or sequentially generating numbers to be called.**

As relevant here, absent an emergency or prior express consent, 47 U.S.C. § 227(b)(1)(A)(iii) makes it unlawful for a party to make a call to a cellular phone *using an ATDS*. Thus, "[t]o state a claim under the TCPA for calls made to a cellular phone, a plaintiff is required to allege that a call was made to a cell or wireless phone by the use of any automatic dialing system[.]" *Cunningham v. TechStorm, LLC*, No. 3:16-CV-2879, 2018 U.S. Dist. LEXIS 105774, at *3 (N.D. Tex. May 29, 2018). An ATDS is defined as "equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. § 227(a)(1)(A)-(B).

In 2018, the D.C. Circuit set aside the Federal Communications Commission's ("FCC") interpretation of an ATDS. *ACA Int'l v. FCC*, 885 F.3d 687, 699 (D.C. Cir. 2018). In particular, the D.C. Circuit took issue with the fact that "a straightforward reading of the [FCC's] ruling invites the conclusion that all smartphones are autodialers[.]" *Id.* The D.C. Circuit emphasized that such an outcome would be an "unreasonable, and impermissible, interpretation of the statute's reach." *Id.* at 697.

Subsequent to *ACA International*, there is a split of authority over the proper interpretation of the ATDS definition.[5] The majority and better-reasoned definition is that an ATDS includes <u>only</u> those devices: (1) with the capacity to store numbers to be called using a random or sequential number generator and to dial such numbers; or (2) with the capacity to

---

[5] In fact, the Supreme Court has granted certiorari to a petition to determine the proper meaning of an ATDS. *See Duguid v. Facebook, Inc.*, 926 F.3d 1146 (9th Cir. 2019), *cert granted Facebook, Inc. v. Duguid*, Docket No. 19-511 (granting certiorari for the October 2020 term as to the proper definition of an autodialer).

produce telephone numbers to be called using a random or sequential number generator and to dial such numbers. In other words, the clause "using a random or sequential number generator" modifies both the verbs to "store" and "produce." Accordingly, to be an autodialer, a telephony system or device **must** be capable of random or sequential number generation.

The Third Circuit was the first federal circuit court of appeals post-*ACA International* to adopt a strict statutory interpretation of an ATDS, concluding that the modifier "using a random or sequential number generator" necessarily modified both the verbs "to store" and "to produce." *See Dominguez ex. rel Himself v. Yahoo, Inc.,* 894 F.3d 116, 120–121 (3rd Cir. 2018) (granting summary judgment where there was no issue of material fact as to whether the technology at issue could randomly or sequentially generate the numbers to be called). Expanding on the analysis in *Dominguez*, the Seventh and Eleventh Circuits agreed with the Third Circuit, both relying on a common sense grammatical reading of the statute that when two conjoined verbs (here, "to store or produce") share a direct object (here, "numbers to be called"), the modifier modifies both verbs in the sequence (in this case, meaning that the numbers to be called must be stored or produced using a random or sequential number generator). *Gadelhak v. AT&T Servs*., 950 F.3d 458, 464–69 (7th Cir. 2020); *Glasser v. Hilton Grand Vacations Co.*, *LLC*, 948 F.3d 1301, 1306–12 (11th Cir. 2020). In other words, as succinctly stated by the Seventh Circuit in *Gadelhak* "***the capacity to generate random or sequential numbers is necessary to the statutory definition*** [of an ATDS]." 950 F.3d at 469 (emphasis added). The FCC recently agreed, explaining "whether the calling platform or equipment is an autodialer turns on whether such equipment ***is capable of dialing random or sequential telephone numbers without human***

***intervention***." *P2P Alliance Petition for Clarification,* DA-20-670, ¶ 8 (2020) (emphasis added).[6]

While the Fifth Circuit has not addressed the definition of an ATDS subsequent to the D.C. Circuit setting aside the FCC's interpretation in 2018, federal district courts in Texas have. And they have agreed with the Third, Seventh, and Eleventh Circuits' interpretation. *See Suttles v. Facebook, Inc.*, No. 1:18-CV-1004-LY, 2020 U.S. Dist. LEXIS 90026, at *17–18 (W.D. Tex. May 20, 2020); *Adams v. Safe Home Sec. Inc.*, No. 3:18-cv-03098-M, 2019 U.S. Dist. LEXIS 126522, at *6–10 (N.D. Tex. July 30, 2019). The court in *Suttles*—armed with the full panoply of competing interpretations between the Third, Seventh, and Eleventh Circuits on the one hand, and the Second and Ninth on the other—in a detailed and well-reasoned decision, joined the textual and grammatically straightforward reading of an autodialer adopted by the Third, Seventh, and Eleventh Circuits. 2020 U.S. Dist. LEXIS 90026, at *10–18. Indeed, the court in *Suttles* found "[t]he court agrees that a device must randomly or sequentially generate—not just store—numbers to be considered an ATDS under the Act." *Id.* at *15. Counsel was unable to locate any district court opinions in the Fifth Circuit that follow the Ninth and Second Circuit's approach.

Joining the Western and Northern Districts of Texas's (along with the Third, Seventh, and Eleventh Circuits') interpretation of an ATDS would create comity amongst district courts in this Circuit. In addition, this reading is grammatically straightforward, and as examined by the *Suttles* court and the Seventh and Eleventh Circuits, squares with the dialing technology in place

---

[6] The Second and Ninth Circuits interpret the term ATDS more broadly, finding that any device with the capacity to store numbers to be called and to call such numbers is an autodialer. *See Duran v. La Boom Disco, Inc.,* 955 F.3d 279 (2nd Cir. 2020); *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018). This view is unsupported by the plain language of the statute and its underlying purpose. Moreover, these definitions are in essence the definition of an ATDS adopted by the FCC that the D.C. Circuit invalidated in *ACA International*.

14

at the time of the TCPA's enactment. *See, e.g.*, *Glasser*, 948 F.3d at 1308–09 (providing a detailed overview that, at the time of the TCPA's passing, dialing technology that could *not* store or produce numbers randomly or sequentially but could call numbers from preprogrammed lists were known—but rejected—from being brought within the TCPA's purview). This Court, therefore, should hold that an actionable TCPA autodialer violation requires that calls to Plaintiff must have been made with a device that can randomly or sequentially store or produce the numbers to be called.

> ## ii. Plaintiff fails to plausibly allege that the dialing technology from which she received the calls was an ATDS.

Plaintiff does not adequately allege the use of an autodialer, rendering her § 227(b)(1)(A)(iii) claim fatally defective. Apropos for this dispute, "[s]imply alleging the use of an ATDS, without more, is insufficient to sustain a TCPA claim." *Cunningham v. Nationwide Sec. Sols., Inc.*, No. 3:17-CV-00337-M, 2017 U.S. Dist. LEXIS 223796, at *7 (N.D. Tex. Nov. 2, 2017). Significantly, while it may be difficult for a plaintiff to discern at the pleading stage whether calls were placed using an ATDS, *see e.g. Reed v. Quicken Loans, Inc.*, No. 3:18-cv-3377-K, 2019 U.S. Dist. LEXIS 159935, at *5 (N.D. Tex. Sept. 3, 2019), a plaintiff still must plead facts sufficient for a court to infer that an autodialer was used. *See Cunningham v. Techstorm, LLC*, No. 3:16-CV-2879-M, 2017 U.S. Dist. LEXIS 25047, at *4 (N.D. Tex. Feb. 23, 2017). Failure to adequately allege the use of an ATDS may even be grounds for dismissal with prejudice. *Suttles*, 2020 U.S. Dist. LEXIS 90026, at *17–18 (finding that amendment would be futile for a plaintiff who alleged he received *targeted* calls from the defendant because, under the narrow reading of an ATDS, targeted calls are not made by an ATDS).

Here, Plaintiff submits only an unadorned legal conclusion regarding the dialing technology supposedly used, which is entitled to no deference: "Defendant initiated multiple

calls to Plaintiff's cellular telephone number using an automatic telephone dialing system."
(Compl. ¶ 23). There are no factual allegations that could support an inference that this is true.
Critically, Plaintiff *does not allege* that the calls were made using a device *with the capacity to
randomly or sequentially generate numbers*. (*See generally,* Compl.). Nor does Plaintiff allege
any factual circumstances that would support an inference such a telephony system was used to
place the alleged calls. (*See generally*, Compl.). Consequently, Plaintiff has failed to state a
§ 227(b) autodialer violation, and Count I must be dismissed.

### D.  Count II Fails Because Plaintiff Does Not Plausibly Allege She Received Multiple Telephone Solicitations Within a Twelve-Month Period.

Plaintiff does not allege, as she must, that she received more than one "telephone
solicitation" in a twelve-month period. Thus, her § 227(c) claim fails.

Claims under 47 U.S.C. § 227(c)(5) are really claims under the FCC's implementing
regulations, which are codified in 47 C.F.R. § 64.1200. Under 47 C.F.R. § 64.1200(c)(2), it is
unlawful to make "telephone solicitations" to "a residential telephone subscriber" whose phone
number appears on the National DNC registry. A "telephone solicitation" is defined in the TCPA
as "the initiation of a telephone call or message for the purpose of encouraging the purchase or
rental of, or investment in, property, goods, or services, which is transmitted to any person[.]" 47
U.S.C. § 227(a)(4); 47 C.F.R. § 64.1200(f)(14). Thus, when a plaintiff alleges that she received
telephone solicitations in violation of 47 C.F.R. § 64.1200(c)(2), "to survive a motion to dismiss,
[Plaintiff] *must allege facts that indicate the [calls] at issue were for that purpose*." *Suttles*,
2020 U.S. Dist. LEXIS 90026, at *6; *see also Morris v. Copart*, No. 4:15-CV-724, 2016 U.S.
Dist. LEXIS 155755, *26–27 (E.D. Tex. Nov. 9, 2016) (granting summary judgment on a claim
for a violation of DNC regulations when there was no triable issue of fact as to whether the calls
encouraged the purchase or rental of property, goods, or services). A person has a private right of

16

action only where she has received ***more than one*** call in a twelve-month period in violation of the National DNC regulations. 47 U.S.C. § 227(c)(5). Additionally, to state a § 227(c) claim, the plaintiff must allege that her telephone line is used for "residential" purposes. *See, e.g.*, *Strange v. Doe*, No. 19-1096, 2020 U.S. Dist. LEXIS 84761, at *7–9 (W.D. La. May 12, 2020) (finding "[t]he private right of action created by 47 U.S.C. § 227(c)(5) is, therefore, arguably limited to redress for violations of the regulations that concern residential telephone subscribers" and collecting cases supporting that proposition).

Here, like her § 227(b) claim, Plaintiff offers a lone legal conclusion to support her § 227(c) claim: "Defendant called Plaintiff on her cellular telephone . . . for solicitation purposes[.]" (Compl. ¶ 12). Plaintiff alleges no additional factual circumstances supporting that these calls were made to encourage her to purchase property, goods, or services. (*See generally*, Compl.). Again, Plaintiff does not allege she answered the calls or that the caller left a voicemail, so she cannot know the content of these calls. Moreover, Plaintiff does not allege how many of the supposed calls were telephone solicitations; thus, it is unclear if more than one of these calls violated FCC regulations as required for a § 227(c) claim. Finally, Plaintiff does not allege that her cellular phone is used for residential purposes. (Compl. ¶ 11 ("Plaintiff has only used this phone number as a cellular telephone.")); *see, e.g.*, *Strange*, 2020 U.S. Dist. LEXIS 84761, at *9 ("Here, Strange alleges only the use of his cellular phone and has not put forth any evidence establishing that his cellular telephone is used for residential purposes. Therefore, he may not recover pursuant to [47 U.S.C. § 227(c)].")). All of these issues render Plaintiff's § 227(c) claim defective, requiring dismissal.

17

**E.      Count III Fails Because Plaintiff Does Not Plausibly Allege More than $50,000 in Actual Damages.**

Plaintiff fails to state a claim under the TSR because she does not plausibly allege above $50,000 in damages. The Telemarketing and Consumer Fraud and Abuse Protection Act ("TCFAPA") is a statute which charges the Federal Trade Commission ("FTC") with the authority to implement regulations to "prohibit[] deceptive telemarketing acts or practices and other abusive telemarketing acts or practices." 15 U.S.C. § 6102(a)(1). Under this grant of authority, the FTC has enacted the TSR, which, *inter alia*, prohibits making calls to individuals whose numbers are listed on the National DNC registry. 16 C.F.R. § 310.4(b)(1)(iii). However, the TCFAPA provides a private right of action only where more than $50,000 in actual damages is at issue. 15 U.S.C. § 6104(a). Consequently, when a plaintiff brings a claim for a violation of the TSR, she must allege she has suffered in excess of $50,000 in actual damages (*i.e.* excluding punitive or treble damages); otherwise, the claim fails as a matter of law. *See, e.g., McDermet v. Heath*, No. 17-12327-FDS, 2018 U.S. Dist. LEXIS 14735, at *7–10 (D. Mass. Jan. 30, 2018) (dismissing a claim brought under the TSR's National DNC registry regulation when the plaintiff failed to allege more than $50,000 in actual damages); *Shostack v. Diller,* 15-CV-2255 (GBD) (JLC), 2015 U.S. Dist. LEXIS 123777, at *34–35 (S.D.N.Y. Sept. 16, 2015) ("In order to sustain a claim under the TSR, however, ***a plaintiff must allege actual damages of $50,000 or more, which excludes punitive damages***." (emphasis added)).

Here, Plaintiff requests damages under 15 U.S.C. § 6104(a), (*see* Compl. at 6), but she fails to plausibly allege that she has suffered more than $50,000 in *actual damages*. In fact, nowhere in the Complaint does Plaintiff specify the amount of her alleged damages or any basis for actual damages. (*See generally*, Compl.). Plaintiff's allegations in Count III for a violation of the TSR merely suggest that Life Protect purportedly violated the TSR but do not address

Plaintiff's ability to bring a private right of action. (Compl. ¶¶ 35–38). Because the Complaint contains no allegations evincing that Plaintiff suffered injuries sufficient to satisfy the requisite $50,000 in actual damages, Count III must be dismissed.

**F.    Count IV Fails Because Plaintiff Does Not Plausibly Allege the Elements of a Claim Under § 302.101 of the Texas Business and Commerce Code.**

Section 302.101 of the Texas Business and Commerce Code requires statutorily-defined "sellers" from making statutorily-defined "telephone solicitations" to statutorily-defined "purchasers" without obtaining a registration certificate. A "seller" is a "person who makes a *telephone solicitation* on the person's own behalf." Tex. Bus. & Com. § 302.100(5) (emphasis added). A "purchaser" is a person who "(A) is solicited to become or becomes obligated for the purchase or rental of an item; or (B) is offered an opportunity to claim or receive an item." Tex. Bus. & Com. § 302.100(3). A "telephone solicitation" is "a telephone call *a seller* . . . initiates to induce a person to purchase, rent, claim, or receive an item." Tex. Bus. & Com. § 302.100(7) (emphasis added).

Plaintiff fails to address how these statutory definitions are met. (*See generally*, Compl.). In other words, the Complaint does not contain sufficient well-pled averments to support a plausible inference that Life Protect made a "telephone solicitation" and is a "seller", or that she is a "purchaser." Indeed, as argued in section II.D, *supra*., because Plaintiff does not allege that the calls constituted "telephone solicitations"—which Plaintiff cannot because she did not answer the calls or receive a voice message—Life Protect cannot be a "seller," as a "seller" necessarily makes "telephone solicitations" as defined by the statute. Furthermore, Plaintiff is not a "purchaser" for similar reasons: because Plaintiff did not answer a call or receive a voice message, she cannot plausibly allege that these calls were to "solicit" or "offer" her to purchase

19

an item. Without plausible allegations supporting that the parties and the calls at issue meet these statutory definitions, Count IV must be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, Life Protect respectfully requests that Plaintiff's Complaint be dismissed with prejudice.

SUBMITTED this 23rd day of July 2020, by:

<div style="margin-left: 40%">

<u>/s/ *Christopher M. Jordan*</u>
**Christopher M. Jordan**
TX State Bar No. 4087817
**MUNSCH HARDT KOPF & HARR, P.C.**
700 Milam Street, Suite 2700
Houston, Texas 77002
Telephone:  (713) 222-4015
Fax:  (713) 222-5834
Email:      cjordan@munsch.com
*Attorneys for Defendant*

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Matthew C. Arentsen, *pro hac vice pending*
Jesse D. Sutz, *pro hac vice pending*
410 17th Street, Suite 2200
Denver, Colorado 80202
Phone: 303.223.1100
Fax:   303.223.1111
Email:      marentsen@bhfs.com
            jsutz@bhfs.com

*To be Attorneys in Charge for Defendant upon approval from Judge Kenneth M. Hoyt*

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on July 23, 2020, I electronically filed the foregoing **MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

_/s/ Christopher M. Jordan_
Christopher M. Jordan

21291628