**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| TERRY PEPPER, | |
|                Plaintiff, | |
| v. | Case No.: 4:20-cv-02154 |
| LIFE PROTECT 24/7, INC., d/b/a LIFE PROTECT 24/7, | |
|             Defendant. | |

## <u>MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AND MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT</u>

Defendant Life Protect 24/7, Inc. ("Life Protect") respectfully moves this Court to dismiss Plaintiff's First Amended Complaint (the "Amended Complaint") (Dkt. 13) under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (the "Motion"). In support of this Motion, Defendant relies on its Memorandum in Support of Motion to Dismiss Plaintiff's Amended Complaint set forth as follows:

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

NATURE AND STAGE OF THE PROCEEDING.................................................... 1

STATEMENT OF ISSUES AND STANDARD OF REVIEW ................................. 3

    I.    Whether Plaintiff Lacks Article III Standing Requiring Dismissal under Rule 12(b)(1) for Lack of Subject Matter Jurisdiction ........................... 3

    II.    Whether Plaintiff has Failed to State a Claim for Relief Requiring Dismissal under Rule 12(b)(6)......................................................................... 4

ARGUMENT ............................................................................................................. 5

    I.    Rule 12(b)(1) Challenge—Plaintiff Lacks Article III Standing ............ 5

        A.    Summary of Argument .......................................................... 5

        B.    Plaintiff's Injuries (If Any) Are Not Fairly Traceable to Life Protect ...................................................................... 6

        C.    Plaintiff Has Not Alleged that She Suffered an Injury In Fact ................ 7

    II.    Rule 12(b)(6) Challenge—Plaintiff Fails to State a Claim for Relief ................ 11

        A.    Summary of Argument .......................................................... 11

        B.    All of Plaintiff's Claims Fail Because She Does Not Plausibly Allege that Life Protect Initiated Any Calls to Her ................................ 12

        C.    Count I Fails Because Plaintiff Does Not Plausibly Allege that Any Calls She Received Were Made Using an ATDS .................................... 13

            i.    An ATDS includes only devices capable of randomly or sequentially storing or producing numbers to be called ............. 13

            ii.    Plaintiff fails to plausibly allege that the dialing technology from which she received the calls was an ATDS ....................... 16

        D.    Count II Fails Because Plaintiff Does Not Plausibly Allege She Received Multiple Telephone Solicitations Within a Twelve-Month Period ...................................................................... 19

        E.    Count III Fails Because Plaintiff Does Not Plausibly Allege the Elements of a Claim Under § 302.101 of the Texas Business and Commerce Code..................................................................... 22

CONCLUSION.......................................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ACA International v. FCC*,
   885 F.3d 687 (D.C. Cir. 2018) ................................................................13, 14, 15, 18

*Adams v. Safe Home Sec. Inc.*,
   No. 3:18-cv-03098-M, 2019 U.S. Dist. LEXIS 126522 (N.D. Tex. July 30,
   2019) ....................................................................................................................15

*Allan v. Pennsylvania Higher Education Assistance Agency*,
   No. 19-2043, 2020 U.S. App. LEXIS 23935 (6th Cir. July 29, 2020) ............................15, 18

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2008) ................................................................................................5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................5

*Bruni v. Hughs*,
   No. 5:20-CV-35, 2020 U.S. Dist. LEXIS 111562 (S.D. Tex. June 24, 2020) .........................4

*Cranor v. 5 Star Nutrition, LLC*,
   No. 1-19-CV-908-LY, 2019 U.S. Dist. LEXIS 230025 (W.D. Tex. Nov. 27,
   2019) ....................................................................................................................8

*Cunningham v. Nationwide Sec. Sols., Inc.*,
   No. 3:17-CV-00337-M, 2017 U.S. Dist. LEXIS 223796 (N.D. Tex. Nov. 2,
   2017) ....................................................................................................................16

*Cunningham v. TechStorm, LLC*,
   No. 3:16-CV-2879, 2018 U.S. Dist. LEXIS 105774 (N.D. Tex. May 29, 2018) ...................13

*Cunningham v. Techstorm, LLC*,
   No. 3:16-CV-2879-M, 2017 U.S. Dist. LEXIS 25047 (N.D. Tex. Feb. 23,
   2017) ....................................................................................................................17

*Duguid v. Facebook, Inc.*,
   926 F.3d 1146 (9th Cir. 2019), *cert granted Facebook, Inc. v. Duguid*, Docket
   No. 19-511 ...............................................................................................................14

*Duran v. La Boom Disco, Inc.*,
   955 F.3d 279 (2nd Cir. 2020) ..................................................................................15

*Eldridge v. Pet Supermarket, Inc.*,
   No. 18-22531-CIV-WILLIAMS, 2020 U.S. Dist. LEXIS 56222 (S.D. Fla.
   Mar. 9, 2020)........................................................................................................9

*Friends of Lydia Ann Channel v. United States Army Corps of Eng'rs*,
   No. 2:15-CV-514, 2016 U.S. Dist. LEXIS 161688 (S.D. Tex. Nov. 22, 2016) ......................5

*FW/PBS, Inc. v. Dallas*,
   493 U.S. 215 (1990)..............................................................................................4

*Gadelhak v. AT&T Servs.*,
   950 F.3d 458 (7th Cir. 2020) ................................................................................15

*Glasser v. Hilton Grand Vacations Co., LLC*,
   948 F.3d 1301 (11th Cir. 2020) ......................................................................15, 16

*Hampton v. Barclays Bank Del.*,
   No. 18-4071-DDC-ADM, 2020 U.S. Dist. LEXIS 145294 (D. Kan. Aug. 13,
   2020) ..................................................................................................................15

*High v. Karbhari*,
   774 F. App'x. 180 (5th Cir. 2019) ..........................................................................6

*Dominguez ex. rel Himself v. Yahoo, Inc.*,
   894 F.3d 116 (3rd Cir. 2018) ................................................................................14

*Lone Star Fund V (US), LP v. Barclays Bank PLC*,
   594 F.3d 383 (5th Cir. 2010) ..................................................................................4

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)..............................................................................................7

*Marks v. Crunch San Diego, LLC*,
   904 F.3d 1041 (9th Cir. 2018) ..............................................................................15

*McGinnis v. Harris Cty.*,
   No. H-19-2449, 2019 U.S. Dist. LEXIS 193190 (S.D. Tex. Nov. 6, 2019) ............................5

*McMahon v. Fenves*,
   946 F.3d 266 (5th Cir. 2020) ..................................................................................3

*McNutt v. General Motors Acceptance Corp.*,
   298 U.S. 178 (1936)..............................................................................................4

*Mittenthal v. Fla. Panthers Hockey Club, Ltd.*,
   No. 0-60734-CIV-ALTMAN/Hunt, 2020 U.S. Dist. LEXIS 123127 (S.D. Fla.
   July 10, 2020)........................................................................................................8

*Morris v. Copart*,
No. 4:15-CV-724, 2016 U.S. Dist. LEXIS 155755 (E.D. Tex. Nov. 9, 2016) ......................19

*Neria v. Dish Network L.L.C.*,
No. 6:19-CV-00430-ADA-JCM, 2020 U.S. Dist. LEXIS 108169 (W.D. Tex.
June 19, 2020) ............................................................................................................12

*Physician Hosps. of Am. v. Sebelius*,
691 F.3d 649 (5th Cir. 2012) ........................................................................................4

*Plotkin v. IP Axess Inc., Etc.*,
407 F.3d 690 (5th Cir. 2005) ........................................................................................4

*Raines v. Byrd*,
521 U.S. 811 (1997)......................................................................................................7

*Reed v. Quicken Loans, Inc.*,
No. 3:18-cv-3377-K, 2019 U.S. Dist. LEXIS 159935 (N.D. Tex. Sept. 3,
2019) ..........................................................................................................................17

*Salcedo v. Hanna*,
936 F.3d 1162 (11th Cir. 2019) ................................................................................8, 9

*Sartin v. EKF Diagnostics, Inc.*,
No: 16-1816 Section: R, 2016 U.S. Dist. LEXIS 86777 (E.D. La. July 5,
2016) ........................................................................................................................7, 8

*Schulz v. Infogroup, Inc.*,
No. 3:19-CV-1620-N, 2020 U.S. Dist. LEXIS 128908 (N.D. Tex. July 21,
2020) ................................................................................................................20, 21, 22

*Shelton v. Nat'l Gas & Elec., LLC*,
No. 17-4063, 2019 U.S. Dist. LEXIS 59235 (E.D. Pa. Apr. 5, 2019) ....................18

*Shuckett v. DialAmerica Mktg*,
No. 17cv2073-LAB (KSC), 2019 U.S. Dist. LEXIS 127049 (S.D. Cal. July
29, 2019) ..................................................................................................................9, 10

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016) ..............................................................................................7, 11

*Strange v. Doe*,
No. 19-1096, 2020 U.S. Dist. LEXIS 84761 (W.D. La. May 12, 2020) ............19, 21

*Suttles v. Facebook, Inc.*,
No. 1:18-CV-1004-LY, 2020 U.S. Dist. LEXIS 90026 (W.D. Tex. May 20,
2020) ..............................................................................................................15, 16, 17, 19

*The Inclusive Cmtys. Project, Inc. v. Dep't of Treasury*,
    946 F.3d 649 (5th Cir. 2019) ........................................................6

*We-Flex, LLC v. NBSP, Inc.*,
    No. H-11-1078, 2012 U.S. Dist. LEXIS 58154 (S.D. Tex. Apr. 25, 2012) ............................4

**Statutes**

47 U.S.C. § 227(a)(1)(A)-(B) ...........................................................13, 18

47 U.S.C. § 227(a)(4) ......................................................................19

47 U.S.C. § 227(b) ......................................................................18, 20

47 U.S.C. § 227(b)(1)(A)(iii) ...........................................3, 12, 13, 16

47 U.S.C. § 227(c) .................................................................3, 19, 20, 21

47 U.S.C. § 227(c)(5) ...................................................................12, 19

Telephone Consumer Protection Act ........................................ *passim*

Tex. Bus. & Com. § 302.100(3)...........................................................22

Tex. Bus. & Com. § 302.100(5)...........................................................22

Tex. Bus. & Com. § 302.100(7)...........................................................22

Tex. Bus. & Com. § 302.101 .....................................................3, 12, 22

**Other Authorities**

47 C.F.R. § 64.1200 ..........................................................................19

47 C.F.R. § 64.1200(c)(2)..............................................................12, 19

47 C.F.R. § 64.1200(f)(14) ...............................................................19

Fed. R. Civ. P. 12(b)(1).................................................................3, 5, 8

Fed. R. Civ. P. 12(b)(6).................................................................4, 5, 11

Fed. R. Civ. P. 15(a) ..........................................................................5

Fed. R. Civ. P. 26(f) ...........................................................................2

*Make*, Merriam-Webster.com Dictionary, https://www.merriam-
    webster.com/dictionary/make (last accessed July 20, 2020) ...................12

*P2P Alliance Petition for Clarification*, DA-20-670, ¶ 8 (2020) ...................15

## INTRODUCTION

Rather than oppose Life Protect's initial motion to dismiss (Dkt. 7), Plaintiff chose to amend her Complaint in an effort to save her claims. Plaintiff's claims, however, still fail. Despite her amendment—which merely added a handful of conclusory allegations—Plaintiff has again failed to allege that she has Article III standing and has failed to state a claim upon which relief may be granted.[1]

Akin to her initial Complaint, Plaintiff's Amended Complaint lacks necessary factual details to support her claims, such as that Life Protect made the outbound calls at issue, that she answered any of the calls, that the caller left her a voicemail, that she experienced dead air time or other circumstances evincing that the calls were made using an autodialer, and that the calls were made for solicitation purposes. These omissions glaringly demonstrate that Plaintiff *cannot* amend her pleading to plausibly aver the necessary details to support her claims: Plaintiff *cannot* trace the calls to Life Protect, *cannot* allege she suffered any concrete injury, *cannot* allege facts indicating the calls were made using an autodialer, and *cannot* allege facts demonstrating the calls were telephone solicitations. These omissions are fatal to Plaintiff's Amended Complaint.

Life Protect's initial motion to dismiss provided Plaintiff with a roadmap of how to re-plead her claims. Tellingly, Plaintiff failed to remedy these defects in her Amended Complaint, demonstrating that any further amendment would be futile. Because amendment would be futile, the Amended Complaint must be dismissed with prejudice.

## NATURE AND STAGE OF THE PROCEEDING

Plaintiff filed her Complaint on June 18, 2020, (Dkt. 1), and Life Protect was served with the Summons and Complaint on July 2, 2020. (Dkt. 6). Life Protect filed a motion to dismiss the initial Complaint on July 23, 2020. (Dkt. 7). In response, Plaintiff filed the Amended Complaint

---

[1] (*See* Ex. A, Redline Comparison of Amended Complaint to initial Complaint).

on August 13, 2020. (Dkt. 13). Life Protect files this Motion to dismiss the Amended Complaint

with prejudice.  No discovery has occurred in this action, and the parties have not yet held a Rule

26(f) conference.

Plaintiff is an individual residing in The Woodlands, Texas, who owns a cellular phone.

(Amended Complaint ¶¶ 6, 11–12).[2] Plaintiff initially and continues to allege that, beginning in

or around January 2020, she received an unspecified number of calls to her cellular phone for

solicitation purposes from Life Protect. (Amended Complaint ¶ 13; Ex. A, at 3). She adds in her

Amended Complaint that she received "two or more calls" while her number was on the national

do-not-call (the "National DNC") registry. (Amended Complaint  ¶¶ 15,18; Ex. A, at 3).[3]

Notably, although Plaintiff has now alleged that she received "two or more *calls*" while on the

National DNC registry, she still does not make any allegations as to how many of these calls

purportedly contained telephone solicitations. (*See generally*, Amended Complaint; Ex. A, at 3).

Necessary details are lacking throughout the Amended Complaint, just as they were in

the initial Complaint. For instance, Plaintiff still fails to include any details supporting that Life

Protect was the caller, as Plaintiff did not add allegations that she answered the calls or that the

caller left a voicemail. (*See generally*, Amended Complaint; Ex. A). Further, Plaintiff still claims

that the calls were made using an Automatic Telephone Dialing System ("ATDS" or

"autodialer")—a specific type of dialing technology prohibited under the Telephone Consumer

Protection Act ("TCPA")—but omits any well-pled, supporting allegations for her assertion.

(Amended Complaint ¶¶ 23–25). The only allegations Plaintiff added regarding the alleged

---

[2] Life Protect accepts as true Plaintiff's well-pled factual averments solely for the purpose of this Motion. Life Protect notes that Plaintiff left a blank paragraph 3 in her Amended Complaint. Despite this apparent error, Life Protect cites to paragraphs as numbered by Plaintiff.
[3] Life Protect denies that it made any calls to Plaintiff and denies that it makes outbound telemarketing calls to consumers.

dialing technology are conclusory and are implausible when viewed in light of Plaintiff's

continued failure to allege that she answered the calls at issue:

> 24. The dialing system used by Defendant to call Plaintiff's cellular
> telephone calls telephone numbers without being prompted by human intervention
> before each call.
>
> 25. The dialing system used by Defendant to call Plaintiff has the present
> and/or future capacity to dial numbers in a random and/or sequential fashion.

 (Amended Complaint ¶¶ 24–25; *see generally,* Ex. A). Plaintiff's basis for such allegations is

entirely absent from the Amended Complaint.

Plaintiff's only purported harm remains the same from the initial Complaint, namely that

she found the calls to be "bothersome, disruptive and frustrating." (Amended Complaint  ¶ 17;

Ex. A, at 3). Significantly, Plaintiff failed to add any additional averments describing how the

calls at issue bothered, disrupted, or frustrated considering she apparently did not answer any of

the alleged calls. (*See generally*, Ex. A).

Based on these vague and largely conclusory allegations, Plaintiff brings three causes of

action against Life Protect:

- Count I—violations of the TCPA's autodialer restrictions, 47 U.S.C. § 227(b)(1)(A)(iii);

- Count II—violations of the TCPA's National DNC restrictions, 47 U.S.C. § 227(c); and

- Count III—violations of Section 302.101 of the Texas Business and Commerce Code.

  (Amended Complaint at  3–5).[4]

### STATEMENT OF ISSUES AND STANDARD OF REVIEW

**I.      Whether Plaintiff Lacks Article III Standing Requiring Dismissal under Rule
12(b)(1) for Lack of Subject Matter Jurisdiction.**

*This Court must decide whether it has subject matter jurisdiction over this action.* The

plaintiff has the burden of demonstrating that the court has subject matter jurisdiction. *McMahon*

---

[4] Plaintiff dropped her claim for relief under the Telemarketing Sales Rule. (*See* Ex. A, at 5).

*v. Fenves*, 946 F.3d 266, 271 (5th Cir. 2020). At the pleading stage, "the plaintiffs' burden is to allege a plausible set of facts establishing jurisdiction." *Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 652 (5th Cir. 2012).

Article III standing is a threshold component of subject matter jurisdiction for which the plaintiff bears the burden. *See, e.g., Bruni v. Hughs*, No. 5:20-CV-35, 2020 U.S. Dist. LEXIS 111562, at *10–11 (S.D. Tex. June 24, 2020). To meet this burden, the plaintiff must provide well-pled factual allegations that the defendant engaged in conduct that caused the plaintiff's harm. *Id*. Indeed, "standing cannot be inferred argumentatively from averments in the pleadings, but rather must affirmatively appear in the [pleading]." *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990) (internal citations and quotations omitted). In short, the plaintiff must "'***allege . . . facts essential to show jurisdiction***. If [they] fail to make the necessary allegations, [they have] no standing.'" *Id*. (quoting *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936) (emphasis added)).

## II.   Whether Plaintiff has Failed to State a Claim for Relief Requiring Dismissal under Rule 12(b)(6).

*This Court must decide whether Plaintiff has stated a claim for relief.* "The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when ***all well-pleaded facts*** are assumed true and are viewed in the light most favorable to the plaintiff." *Lone Star Fund V (US), LP v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (emphasis added). To that end, courts "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc., Etc.*, 407 F.3d 690, 696 (5th Cir. 2005). Thus, a complaint "must include sufficient facts to indicate the facial plausibility of the claims asserted, raising the 'right to relief above the speculative level.'" *We-Flex, LLC v. NBSP,*

*Inc.*, No. H-11-1078, 2012 U.S. Dist. LEXIS 58154, at *10 (S.D. Tex. Apr. 25, 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007)).

In the Rule 12(b)(6) context, "[p]lausibility means that the factual content 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2008)). "Although specifics are not necessary, a complaint must contain enough facts to nudge the claims 'across the line from conceivable to plausible.' In other words, the factual allegations must allow for an inference of '***more than a sheer possibility that a defendant has acted unlawfully***.'" *Id.* (emphasis added) (internal citations omitted).

Critical here is that, while a court generally should provide the plaintiff with an opportunity to amend the pleading pursuant to Rule 15(a) before dismissing the complaint with prejudice, once the complaint has been amended, if the court finds that further amendment would be futile, dismissal should be ***with prejudice***. *See, e.g.*, *McGinnis v. Harris Cty.*, No. H-19-2449, 2019 U.S. Dist. LEXIS 193190, at *6–8 (S.D. Tex. Nov. 6, 2019).

## ARGUMENT

## I.    Rule 12(b)(1) Challenge—Plaintiff Lacks Article III Standing.

### A.    Summary of Argument.

The Amended Complaint should be dismissed in its entirety with prejudice because Plaintiff failed to add allegations demonstrating that she has standing. (*See generally*, Ex. A). To establish standing, Plaintiff must plausibly allege the following three elements: "(1) an injury in fact that is (a) concrete and particularized and (b) actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) the likelihood that a favorable decision will redress the injury." *Friends of Lydia Ann Channel v. United States Army Corps of Eng'rs*, No. 2:15-CV-514, 2016 U.S. Dist. LEXIS 161688, at *5 (S.D. Tex. Nov. 22, 2016).

Here, Plaintiff fails to allege facts sufficient to support an inference that Life Protect called her, meaning that her injuries, if any, are not fairly traceable to Life Protect. In addition, Plaintiff fails to allege that she has suffered a concrete, particular injury.

**B.     Plaintiff's Injuries (If Any) Are Not Fairly Traceable to Life Protect.**

Because Plaintiff did not add any allegations to her Amended Complaint that would support an inference that Life Protect was the caller, it is clear that she cannot trace the calls to Life Protect and, thus, lacks standing. (*See generally*, Ex. A). To satisfy the second element of the standing inquiry, the injury must be fairly traceable to specific misconduct engaged in by a specific defendant. *See High v. Karbhari*, 774 F. App'x. 180, 183 (5th Cir. 2019) (finding that a plaintiff did not allege that his claims were traceable to the conduct of two defendants when the plaintiff failed to name either of the defendants in the complaint). At the pleading stage, the plaintiff must sufficiently allege—with well-pled factual averments—that it was ***the defendant's conduct*** that caused the plaintiff's harm. *See The Inclusive Cmtys. Project, Inc. v. Dep't of Treasury*, 946 F.3d 649, 655 (5th Cir. 2019) (explaining that the plaintiff's burden is to allege a plausible causal link between the defendant's conduct and the plaintiff's harm).

Here, there is no basis from the Amended Complaint to conclude that Life Protect made any calls to Plaintiff. Plaintiff does not plead that she answered any of the calls, that the caller identified itself by leaving a voicemail, or any other factual circumstances supporting an inference that the calls were made by Life Protect. (*See generally*, Amended Complaint). In fact, Plaintiff offers ***no facts*** supporting her identification of Life Protect as the caller. The only connection between Life Protect and the calls allegedly made to Plaintiff is that Plaintiff names Life Protect as the defendant in this lawsuit. This is not enough for standing purposes. And because Plaintiff amended her initial Complaint, but failed to add any allegations plausibly identifying Life Protect as the caller, it is clear that she cannot make such allegations and any

6

further amendment would be futile. (*See generally*, Ex. A).Thus, the Amended Complaint must be dismissed with prejudice.

### C.   Plaintiff Has Not Alleged that She Suffered an Injury In Fact.

Plaintiff did not add any allegations in her Amended Complaint—as she must—supporting an inference that she suffered any concrete harm. (*See generally*, Ex. A). Therefore, she has not and cannot allege that she suffered an injury in fact and lacks standing.

Standing requires an actual and imminent injury that is concrete and particularized. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-560 (1992). While Congress may create a private right of action for a statutory violation, "Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Raines v. Byrd*, 521 U.S. 811, at 820, n. 3 (1997). That is, even in the context of a statutory violation, a Plaintiff **must allege some concrete, personal harm**. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) ("Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.").

Under the TCPA, it is not enough to allege merely that the defendant violated the TCPA to confer standing. *Sartin v. EKF Diagnostics, Inc.,* No: 16-1816 Section: R, 2016 U.S. Dist. LEXIS 86777, at *8 (E.D. La. July 5, 2016). For example, in *Sartin*, the plaintiff alleged that he was a recipient of a junk fax as part of the defendant's junk fax campaign in violation of the TCPA; his purported injuries were only "statutory damages, in addition to actual damages, including but not limited to those contemplated by Congress and the [Federal Communications Commission]." *Id*. at *8. The court determined the plaintiff lacked standing because his "vague reference to Congress and the FCC provides no factual material from which the Court can

reasonably infer what specific injury, if any, [plaintiff] sustained through defendants' alleged statutory violations." *Id*. at *9.

Additionally, the Eleventh Circuit recently ruled that a single text message in violation of the TCPA is insufficient to confer standing. *See Salcedo v. Hanna*, 936 F.3d 1162, 1172–73 (11th Cir. 2019). In *Salcedo*, the Eleventh Circuit noted that—in the context of the TCPA—an inquiry as to the injury suffered by the plaintiff is fact-dependent but held that simply alleging that the defendant violated the TCPA in a single instance by sending a single text message to the plaintiff is insufficient to plausibly allege concrete harm. *Id*. at 1167–68. Ultimately, the plaintiff in *Salcedo* lacked standing because by merely alleging that he received one text message in violation of the TCPA (which he alleged wasted his time in reading it), his injury was not concrete. *Id*. at 1173. To wit, the Fifth Circuit has not addressed *Salcedo*, but the only sister district court in the Circuit to address *Salcedo* agreed with its central holding and reasoning in finding that receiving a single, unwanted text message in violation of the TCPA was not a concrete injury.  *See Cranor v. 5 Star Nutrition, LLC*, No. 1-19-CV-908-LY, 2019 U.S. Dist. LEXIS 230025, at *6–10 (W.D. Tex. Nov. 27, 2019) (adopting *Salcedo*'s holding and dismissing the complaint with prejudice under Rule 12(b)(1)).

Significantly, other federal district courts have extended the *Salcedo* holding or applied similar reasoning to dismiss TCPA claims on standing grounds when the plaintiff alleges minimal harm, even if she received multiple calls or text messages in violation of the TCPA. *See Mittenthal v. Fla. Panthers Hockey Club, Ltd.*, No. 0-60734-CIV-ALTMAN/Hunt, 2020 U.S. Dist. LEXIS 123127, at *20 (S.D. Fla. July 10, 2020) ("*Salcedo*, in short, stands for the proposition that, unless a complaint alleges some tangible or intangible harm, a TCPA plaintiff's receipt of unwanted text messages is, standing alone, insufficient to confer Article III

standing."); *Eldridge v. Pet Supermarket, Inc.*, No. 18-22531-CIV-WILLIAMS, 2020 U.S. Dist. LEXIS 56222 (S.D. Fla. Mar. 9, 2020) (finding that receiving five short marketing texts failed to confer standing when the plaintiff alleged nuisance and consumption of phone battery because such allegations only evinced that the plaintiff suffered a minimal and a non-concrete intrusion of privacy or waste of time); *Shuckett v. DialAmerica Mktg*, No. 17cv2073-LAB (KSC), 2019 U.S. Dist. LEXIS 127049 (S.D. Cal. July 29, 2019) (allegations of a missed call is insufficient to confer standing if the plaintiff fails to allege supporting facts that she noticed the calls).

Here, therefore, Plaintiff's burden is to plausibly allege that she received multiple calls in violation of the TCPA and the Texas Business and Commerce Code that caused Plaintiff some form of concrete harm beyond simply noticing that she received a missed call sometime after-the-fact. *See Salcedo*, 936 F.3d at 1172. ("The chirp, buzz, or blink of a cell phone receiving a single text message is more akin to walking down a busy sidewalk and having a flyer briefly waived in one's face. Annoying, perhaps, but not a basis for invoking the jurisdiction of the federal courts."). Plaintiff fails to meet her burden.

Indeed, although Plaintiff baldly avers that Life Protect called her repeatedly and that she received "two or more calls" from Life Protect, (Amended Complaint ¶¶ 13, 18), she does not allege how many of these calls violated the statutes at issue. (*See generally*, Amended Complaint). That is, even if Plaintiff did receive two or more calls as now alleged, these allegations—standing alone—are insufficient to confer standing. Importantly, not all unwanted calls violate the TCPA or the Texas Business and Commerce Code. As to Count I, only calls made to a cell phone with an autodialer violate the TCPA's autodialing prohibitions. Yet, Plaintiff does not allege how many calls she received from an autodialer. (*See generally*, Amended Complaint). As to Counts II and III, only calls that contain a statutorily-defined

"telephone solicitation" are actionable. Yet, Plaintiff does not allege how many calls contained a telephone solicitation. (*See generally*, Amended Complaint). Therefore, it remains equally plausible that she received only one call (or none) placed by an ATDS or only one call (or none) involving a telephone solicitation—which is insufficient to confer standing.

Further, Plaintiff's lone allegation of harm—that the calls were bothersome, disruptive, or frustrating—is not sufficient to support a finding that she suffered a concrete injury. This is especially true given that Plaintiff does not even allege that she answered any call or that the caller left a voicemail, which strongly suggests she did not in fact answer the calls and no voicemails were left.

At best, Plaintiff's allegations support an inference that she noticed the calls in the form of missed calls on her cell phone at some point after they occurred. As explained in *Shuckett*, however, looking at one's phone and noticing a missed call at some point after the call occurred is not sufficient to confer standing. Indeed, like those claims dismissed in *Shuckett*, this Court lacks critical details necessary to establish that Plaintiff suffered a concrete injury, such as: whether the phone was in Plaintiff's possession when she received the alleged calls; whether Plaintiff was aware of the calls contemporaneously as they were received; and the length of any of the calls. Plaintiff, of course, had the opportunity to provide such facts in her Amended Complaint. Yet, she did not. (*See generally*, Ex. A). It is therefore apparent that Plaintiff cannot provide additional information to support a finding that she suffered any concrete harm. In sum, Plaintiff's vaguely alleged "injuries" that the unspecified number of calls bothered, disturbed, and frustrated her are not concrete enough for standing.

Lastly, Plaintiff's lack of standing is especially glaring with respect to her claim under the Texas Business and Commerce Code. It is unclear, in any respect, that she suffered concrete

harm as a result of Life Protect's supposed failure to register as a telemarketer. Assuming *arguendo* that Life Protect was the caller (which it was not) and lacked a registration in violation of the statute, it is also true that had Life Protect obtained the requisite license, it would have still made these same alleged calls. Put differently, Plaintiff would have received the calls regardless of whether the caller violated the Texas Business and Commerce Code. Consequently, whether the caller was appropriately registered is immaterial to this dispute and to Plaintiff's alleged injuries of bother, disruption, and frustration. In essence, Plaintiff is suing to enforce a state registration requirement in which she has no tangible stake and from which she suffers no concrete harm for a violation thereof. In that sense, she is suing to enforce a procedural violation, which is insufficient to confer standing under *Spokeo*.

Like Plaintiff's initial Complaint, Plaintiff has not alleged in her Amended Complaint "facts essential" to demonstrate that she has suffered an injury in fact. As a result of her failure to cure this deficiency, her Amended Complaint must be dismissed with prejudice for lack of standing.

## II.     Rule 12(b)(6) Challenge—Plaintiff Fails to State a Claim for Relief.

### A.     Summary of Argument.

Like Plaintiff's failure to add allegations supporting an inference that she has standing, Plaintiff also failed to add sufficient allegations to plausibly state a claim on any of her three causes of action. As detailed below, the common thread through Plaintiff's Amended Complaint—and by virtue, this Motion—is that she offers only conclusory allegations in support of her claims. Stripped of these conclusions, as the Court must in reviewing the sufficiency of the pleading, the Amended Complaint fails as a matter of law.

All three of Plaintiff's claims fail for similar reasons to why her harms, if any, are not traceable to Life Protect: *Plaintiff fails to plausibly allege that Life Protect "initiated" or*

*"made" the calls to her*. Further, Plaintiff's two TCPA claims fail because Plaintiff still does not

allege (1) facts supporting an inference that calls to her were made using an autodialer, and (2)

facts supporting an inference that at least two of the calls involved telephone solicitations in

violation of the National DNC regulations. Finally, Plaintiff's claim under the Texas Business

and Commerce Code fails because neither she nor Life Protect meets certain necessary statutory

definitions as alleged.

**B.      All of Plaintiff's Claims Fail Because She Does Not Plausibly Allege that Life Protect Initiated Any Calls to Her.**

Plaintiff's claims fail because—despite amending her pleading—she still does not

plausibly allege that Life Protect was the caller. All of her claims hinge on alleging facts

sufficient to support a more-than-speculative inference that Life Protect actually initiated or

made the calls at issue. *See* 47 U.S.C. § 227(b)(1)(A)(iii) (rendering it unlawful to "make any

call" to a cell phone using an ATDS); 47 U.S.C. § 227(c)(5) (making it unlawful under 47 CFR §

64.1200(c)(2) to "initiate any telephone solicitation" to a residential telephone on the National

DNC); Texas Bus. & Com. § 302.101 (prohibiting sellers from "mak[ing] . . . a telephone

solicitation to a purchaser located in this state" without registering). Thus, among other elements,

to state a viable claim under any of these laws, a plaintiff must sufficiently allege that the

defendant was the caller. *See, e.g.*, *Neria v. Dish Network L.L.C.*, No. 6:19-CV-00430-ADA-

JCM, 2020 U.S. Dist. LEXIS 108169, at *9 (W.D. Tex. June 19, 2020) ("[a] plaintiff asserting a

claim under the TCPA must prove: (1) defendant ***made a call to a cellular telephone*** . . ."

(emphasis added)).[5]

---

[5] Undersigned counsel has not been able to locate an interpretation of  the term "making" in the Texas
Business and Commerce Code. However, this term should be read in accordance with its plain meaning.
"Make" is defined as "to bring into being[.]" *Make*, Merriam-Webster.com Dictionary,
https://www.merriam-webster.com/dictionary/make (last accessed July 20, 2020) Thus, "making" a call
under Texas law would be interpreted the same as the TCPA—to cause the call to occur.

Here, for the same reasons argued in *supra*, section I.A., Plaintiff does not plausibly allege that Life Protect was in fact the caller. Moreover, given that Plaintiff has already amended her pleading and failed to add additional details addressing how she knows that Life Protect was the caller, it is apparent that Plaintiff cannot remedy this defect through further amendment. (*see generally*, Ex. A). For this reason alone, her claims all fail and the Amended Complaint must be dismissed with prejudice.

### C. Count I Fails Because Plaintiff Does Not Plausibly Allege that Any Calls She Received Were Made Using an ATDS.

#### i. An ATDS includes only devices capable of randomly or sequentially storing or producing numbers to be called.

As relevant here, absent an emergency or prior express consent, 47 U.S.C. § 227(b)(1)(A)(iii) makes it unlawful for a party to make a call to a cellular phone *using an automatic telephone dialing system ("ATDS")*. Thus, "[t]o state a claim under the TCPA for calls made to a cellular phone, a plaintiff is required to allege that a call was made to a cell or wireless phone by the use of any automatic dialing system[.]" *Cunningham v. TechStorm*, *LLC*, No. 3:16-CV-2879, 2018 U.S. Dist. LEXIS 105774, at *3 (N.D. Tex. May 29, 2018). An ATDS is defined as "equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. § 227(a)(1)(A)-(B).

In 2018, the D.C. Circuit set aside the Federal Communications Commission's ("FCC") interpretation of an ATDS. *ACA Int'l v. FCC*, 885 F.3d 687, 699 (D.C. Cir. 2018). In particular, the D.C. Circuit took issue with the fact that "a straightforward reading of the [FCC's] ruling invites the conclusion that all smartphones are autodialers[.]" *Id.* The D.C. Circuit emphasized that such an outcome would be an "unreasonable, and impermissible, interpretation of the statute's reach." *Id.* at 697. In the end, the D.C. Circuit invalidated the FCC's prior

13

interpretations of an ATDS, including the FCC's 2015 interpretation that posited that an ATDS could include devices that had the capacity (*i.e.* the future potential) to function as an autodialer. *Id*. at 696–700.

Subsequent to *ACA International*, there is a split of authority over the proper interpretation of the ATDS definition.[6] The better-reasoned definition is that an ATDS includes only those devices: (1) with the capacity to store numbers to be called using a random or sequential number generator and to dial such numbers; or (2) with the capacity to produce telephone numbers to be called using a random or sequential number generator and to dial such numbers. In other words, the clause "using a random or sequential number generator" modifies both the verbs to "store" and "produce." Accordingly, to be an autodialer, a telephony system or device ***must*** be capable of random or sequential number generation.

The Third Circuit was the first federal circuit court of appeals post-*ACA International* to adopt a strict statutory interpretation of an ATDS, concluding that the modifier "using a random or sequential number generator" necessarily modified both the verbs "to store" and "to produce." *See Dominguez ex. rel Himself v. Yahoo, Inc.,* 894 F.3d 116, 120–121 (3rd Cir. 2018) (granting summary judgment where there was no issue of material fact as to whether the technology at issue could randomly or sequentially generate the numbers to be called). Expanding on the *Dominguez* holding, the Seventh and Eleventh Circuits agreed with the Third Circuit, both relying on a common sense grammatical reading of the statute that when two conjoined verbs (here, "to store or produce") share a direct object (here, "numbers to be called"), the modifier modifies both verbs in the sequence (in this case, meaning that the numbers to be called must be

---

[6] In fact, the Supreme Court has granted certiorari to a petition to determine the proper meaning of an ATDS. *See Duguid v. Facebook, Inc.,* 926 F.3d 1146 (9th Cir. 2019), *cert granted  Facebook, Inc. v. Duguid*, Docket No. 19-511 (granting certiorari for the October 2020 term as to the proper definition of an autodialer).

14

stored or produced using a random or sequential number generator). *Gadelhak v. AT&T Servs.*, 950 F.3d 458, 464–69 (7th Cir. 2020); *Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301, 1306–12 (11th Cir. 2020). In other words, as succinctly stated by the Seventh Circuit in *Gadelhak* "***the capacity to generate random or sequential numbers is necessary to the statutory definition*** [of an ATDS]." 950 F.3d at 469 (emphasis added). The FCC recently agreed, explaining "whether the calling platform or equipment is an autodialer turns on whether such equipment ***is capable of dialing random or sequential telephone numbers without human intervention***." *P2P Alliance Petition for Clarification,* DA-20-670, ¶ 8 (2020) (emphasis added).[7]

While the Fifth Circuit has not addressed the definition of an ATDS subsequent to the D.C. Circuit setting aside the FCC's interpretation in 2018, federal district courts in Texas have. And they have agreed with the Third, Seventh, and Eleventh Circuits' interpretation. *See Suttles v. Facebook, Inc.*, No. 1:18-CV-1004-LY, 2020 U.S. Dist. LEXIS 90026, at *17–18 (W.D. Tex. May 20, 2020); *Adams v. Safe Home Sec. Inc.*, No. 3:18-cv-03098-M, 2019 U.S. Dist. LEXIS 126522, at *6–10 (N.D. Tex. July 30, 2019). The court in *Suttles*—armed with the panoply of competing interpretations between the Third, Seventh, and Eleventh Circuits on the one hand, and the Second and Ninth on the other—in a detailed and well-reasoned decision, joined the

---

[7] The Second, Sixth, and Ninth Circuits interpret the term ATDS more broadly, finding that any device with the capacity to store numbers to be called and to call such numbers is an autodialer. *See Allan v. Pennsylvania Higher Education Assistance Agency*, No. 19-2043, 2020 U.S. App. LEXIS 23935 (6th Cir. July 29, 2020); *Duran v. La Boom Disco, Inc.,* 955 F.3d 279 (2nd Cir. 2020); *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018). This view is not supported by the plain language of the statute or its underlying purpose or legislative history. Moreover, these definitions are in essence the definition of an ATDS adopted by the FCC that the D.C. Circuit invalidated in *ACA International*. Since the filing of Life Protect's motion to dismiss, the District of Kansas has weighed in—adopting the narrow definition of an ATDS—and predicting that the Tenth Circuit would likely side with the Third, Seventh, and Eleventh Circuits. *See Hampton v. Barclays Bank Del.*, No. 18-4071-DDC-ADM, 2020 U.S. Dist. LEXIS 145294, *81–84 (D. Kan. Aug. 13, 2020).This would tip the scales with four circuits adopting the narrow definition, and three adopting the broad definition.

textual and grammatically straightforward reading of an autodialer adopted by the Third, Seventh, and Eleventh Circuits. 2020 U.S. Dist. LEXIS 90026, at \*10–18. Indeed, the court in *Suttles* found "[t]he court agrees that a device must randomly or sequentially generate—not just store—numbers to be considered an ATDS under the Act." *Id*. at \*15. Counsel was unable to locate any district court opinions in the Fifth Circuit that follow the Second, Ninth, and now Sixth Circuit's approach.

Joining the Western and Northern Districts of Texas's (along with the Third, Seventh, and Eleventh Circuits') interpretation of an ATDS would create comity amongst district courts in this Circuit. In addition, this reading is grammatically straightforward, and as examined by the *Suttles* court and the Seventh and Eleventh Circuits, squares with the dialing technology in place at the time of the TCPA's enactment. *See, e.g.*, *Glasser*, 948 F.3d at 1308–09 (providing a detailed overview that, at the time of the TCPA's passing, dialing technology that could *not* store or produce numbers randomly or sequentially but could call numbers from preprogrammed lists were known—but rejected—from being brought within the TCPA's purview). This Court, therefore, should hold that an actionable TCPA autodialer violation requires that calls to Plaintiff must have been made with a device that can randomly or sequentially store or produce the numbers to be called.

> ii.  **Plaintiff fails to plausibly allege that the dialing technology from which she received the calls was an ATDS.**

Despite her amendment to include a handful of implausible, conclusory allegations, Plaintiff still does not adequately allege the use of an autodialer, rendering her § 227(b)(1)(A)(iii) claim fatally defective. Apropos for this dispute, "[s]imply alleging the use of an ATDS, without more, is insufficient to sustain a TCPA claim." *Cunningham v. Nationwide Sec. Sols., Inc.*, No. 3:17-CV-00337-M, 2017 U.S. Dist. LEXIS 223796, at \*7 (N.D. Tex. Nov. 2,

2017). Significantly, while it may be difficult for a plaintiff to discern at the pleading stage whether calls were placed using an ATDS, *see e.g. Reed v. Quicken Loans, Inc.*, No. 3:18-cv-3377-K, 2019 U.S. Dist. LEXIS 159935, at *5 (N.D. Tex. Sept. 3, 2019), a plaintiff still must plead facts sufficient for a court to infer that an autodialer was used. *See Cunningham v. Techstorm, LLC*, No. 3:16-CV-2879-M, 2017 U.S. Dist. LEXIS 25047, at *4 (N.D. Tex. Feb. 23, 2017). For instance, the plaintiff must plead facts, such as experiencing dead-air time or playback errors, for a court to find that the plaintiff adequately alleged the use of an ATDS. *Id*. at *4, *7. Of course, failure to adequately allege the use of an ATDS may be grounds for dismissal with prejudice. *Suttles*, 2020 U.S. Dist. LEXIS 90026, at *17–18.

Here, Plaintiff submits only conclusory and unsupported allegations regarding the dialing technology supposedly used. In support of her conclusion that "Defendant initiated multiple calls to Plaintiff's cellular telephone number using an automatic telephone dialing system," (Amended Complaint ¶ 23), Plaintiff adds to her Amended Complaint that:

- "The dialing system used by Defendant to call Plaintiff's cellular telephone calls telephone numbers without being prompted by human intervention for each call." (Amended Complaint ¶ 24; Ex. A, at 4).

- "The dialing system used by Defendant to call Plaintiff has the present and/or future capacity to dial numbers in a random and/or sequential fashion." (Amended Complaint ¶ 25; Ex. A, at 4).

These threadbare allegations are entitled to no deference. Plaintiff provides no supporting allegations addressing how she could possibly know that the dialing system used did not require human intervention or that it had the present and/or future capacity to dial numbers in a random or sequential fashion. (*See generally*, Amended Complaint). Because Plaintiff does not allege

that she answered any of the calls, it is implausible for her to aver that she has any basis—beyond mere speculation—to know the dialing technology used.

Further, Plaintiff's allegation that the device used to call her "has the present and/or future capacity to dial numbers in a random and/or sequential fashion" is not what is covered under the TCPA's definition of an ATDS.  *See* 47 U.S.C. 227(a)(1)(A)-(B) ("The term 'automatic telephone dialing system' means equipment ***which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator***; and to dial such numbers." (emphasis added)). Plaintiff does not allege that the calls were made using a device with the capacity *to store or produce numbers randomly or sequentially*, just that the device has the present and/or future capacity to dial numbers randomly and/or sequentially.[8] Finally, Plaintiff does not allege any factual circumstances that would support an inference that the telephony system used to place the alleged calls functioned as an ATDS, such as experiencing dead air time or playback errors. (*See generally*, Amended Complaint).

Consequently, Plaintiff has failed to state a § 227(b) autodialer violation. Amendment would be futile because Plaintiff had the opportunity to add additional factual allegations but instead included only conclusory allegations in her Amended Complaint that are not plausible in light of her failure to plead that she answered any of the calls. Thus, Count I must be dismissed with prejudice.

---

[8] Moreover, under *ACA*, which invalidated, *inter alia*, the FCC's 2015 interpretation of an ATDS that included devices with the future capacity to function as an autodialer, a device ***only*** having the future capacity to function as an autodialer is not an ATDS. Even *Allan*, which adopted the broad definition of an ATDS, acknowledged that in *ACA*, the D.C. Circuit foreclosed the possibility that a device with ***only the future capacity*** to function as an autodialer was covered by the TCPA. 2020 U.S. App. LEXIS 23935, at *24 ("[U]se of a [device] would be subject to a fine under the TCPA only if it actually is used as an ATDS."). Thus, even construing Plaintiff's allegation as true, if the device used to call Plaintiff only had the future capacity to function as an autodialer, it would not constitute an ATDS. Other courts have agreed that only having the future capacity to function as an ATDS is insufficient to render a device an autodialer. *See Shelton v. Nat'l Gas & Elec., LLC*, No. 17-4063, 2019 U.S. Dist. LEXIS 59235, at *30 (E.D. Pa. Apr. 5, 2019) (collecting cases).

**D.    Count II Fails Because Plaintiff Does Not Plausibly Allege She Received Multiple Telephone Solicitations Within a Twelve-Month Period.**

Plaintiff still does not allege that she received more than one "*telephone solicitation*" in a twelve-month period and in fact does not allege how many "telephone solicitations" she received. (*See generally*, Amended Complaint; Ex. A, at 3). Thus, her § 227(c) claim fails.

Claims under 47 U.S.C. § 227(c)(5) are really claims under the FCC's implementing regulations, which are codified in 47 C.F.R. § 64.1200. Under 47 C.F.R. § 64.1200(c)(2), it is unlawful to make "telephone solicitations" to "a residential telephone subscriber" whose phone number appears on the National DNC registry. A "telephone solicitation" is defined in the TCPA as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person[.]" 47 U.S.C. § 227(a)(4); 47 C.F.R. § 64.1200(f)(14). Thus, when a plaintiff alleges that she received telephone solicitations in violation of 47 C.F.R. § 64.1200(c)(2), "to survive a motion to dismiss, [Plaintiff **must allege facts that indicate the [calls] at issue were for that purpose**." *Suttles*, 2020 U.S. Dist. LEXIS 90026, at *6 (emphasis added); *see also Morris v. Copart*, No. 4:15-CV-724, 2016 U.S. Dist. LEXIS 155755, *26–27 (E.D. Tex. Nov. 9, 2016) (granting summary judgment for defendant on a claim for a violation of DNC regulations when there was no triable issue of fact as to whether the calls encouraged the purchase or rental of property, goods, or services). A person has a private right of action only where she has received **more than one** call in a twelve-month period in violation of the National DNC regulations. 47 U.S.C. § 227(c)(5). Additionally, to state a § 227(c) claim, the plaintiff must allege that her telephone line is used for "residential" purposes. *See, e.g.*, *Strange v. Doe*, No. 19-1096, 2020 U.S. Dist. LEXIS 84761, at *7–9 (W.D. La. May 12, 2020) (finding "[t]he private right of action created by 47 U.S.C. §

227(c)(5) is, therefore, arguably limited to redress for violations of the regulations that concern residential telephone subscribers" and collecting cases supporting that proposition).

Just last month, the Northern District of Texas dismissed a claim similar to Plaintiff's on the grounds that the plaintiff had failed to sufficiently allege the calls constituted "telephone solicitations." *See generally*, *Schulz v. Infogroup, Inc.*, No. 3:19-CV-1620-N, 2020 U.S. Dist. LEXIS 128908 (N.D. Tex. July 21, 2020) (dismissing the plaintiff's TCPA claim for a violation of the telemarketing regulations). Like here, in *Schulz*, the plaintiff did not allege answering the calls or receiving any messages from the caller. *Id*. at *2. The plaintiff there alleged that he called back the number from which he received missed calls and was connected to an automated message from defendant. *Id*. at *2–3. The defendant argued—and the court agreed—that these allegations, standing alone, were not sufficient to aver that the calls constituted telemarketing because the plaintiff did not allege to know their content. *Id*. at *5–6. Noting that the TCPA only prohibits calls *initiated* with a telemarketing purpose, the court in *Schulz* found that reverse engineering a call's purported telemarking purpose by calling a number back and hearing a message relating to a product or service is insufficient to allege that the calls were *initiated* for a telemarketing purpose, as this "context" does not adequately support the purpose for which the *outbound* calls were made. *Id*. at *6.

Here, like her § 227(b) claim, Plaintiff offers only conclusory allegations to support her § 227(c) claim:

- "Defendant called Plaintiff on her cellular telephone . . . for solicitation purposes[.]" (Amended Complaint ¶ 13).

- "Plaintiff received two or more calls from Defendant while on the Do Not Call Registry within a single year" (Amended Complaint ¶ 18; Ex. A, at 3)

These allegations are insufficient to plausibly allege a claim under 47 U.S.C. § 227(c). Despite her amendment, Plaintiff alleges no additional factual circumstances supporting that these alleged outbound calls were made to encourage her to purchase property, goods, or services. (*See generally,* Amended Complaint). Again, and analogous to the deficient pleading in *Schulz*, Plaintiff does not allege that she answered the calls or that the caller left a voicemail, so she *cannot* know the content of these calls and, thus, *cannot* plausibly allege they included telephone solicitations. (*See generally*, Amended Complaint).[9]

Additionally, despite her conclusory amended allegation that she received more than two calls in a year, Plaintiff still does not allege how many of the supposed calls were telephone solicitations. (*See generally*, Amended Complaint). Thus, it is unclear if more than one of these calls violated FCC regulations as required for a § 227(c) claim. Finally, Plaintiff still does not allege that her cellular phone is *used for residential purposes*, which is necessary to her § 227(c) claim. (Amended Complaint ¶ 12 ("Plaintiff has only used this phone number as a cellular telephone.")); *see, e.g.*, *Strange*, 2020 U.S. Dist. LEXIS 84761, at *9 ("Here, Strange alleges only the use of his cellular phone and has not put forth any evidence establishing that his cellular telephone is used for residential purposes. Therefore, he may not recover pursuant to [47 U.S.C. § 227(c)].").

Notwithstanding that Plaintiff had the opportunity to amend her pleading to fix these myriad deficiencies, she failed to do so. These deficiencies evince that Plaintiff cannot allege a plausible claims under § 227(c). Further amendment here would thus be futile, and this claim must be dismissed with prejudice.

---

[9] Even worse than *Schulz*, Plaintiff here does not even allege any context through which she determined the calls constituted telephone solicitations; and even if she did, such context would not be sufficient to state a claim under § 227(c). *See Schulz*, 2020 U.S. Dist. LEXIS 128908, at *6 (deeming "messages [plaintiff] heard when he affirmatively contacted [defendant] are not TCPA violations and can only provide context for [defendant's] calls to [plaintiff].").

E.     **Count III Fails Because Plaintiff Does Not Plausibly Allege the Elements of a Claim Under § 302.101 of the Texas Business and Commerce Code.**

Section 302.101 of the Texas Business and Commerce Code prohibits statutorily-defined "sellers" from making statutorily-defined "telephone solicitations" to statutorily-defined "purchasers" without obtaining a registration certificate. A "seller" is a "person who makes a ***telephone solicitation*** on the person's own behalf." Tex. Bus. & Com. § 302.100(5) (emphasis added). A "purchaser" is a person who "(A) is solicited to become or becomes obligated for the purchase or rental of an item; or (B) is offered an opportunity to claim or receive an item." Tex. Bus. & Com. § 302.100(3). A "telephone solicitation" is "a telephone call ***a seller*** . . . initiates to induce a person to purchase, rent, claim, or receive an item." Tex. Bus. & Com. § 302.100(7) (emphasis added).

Like her initial Complaint, Plaintiff fails to address how these statutory definitions are met in her Amended Complaint. (*See generally*, Amended Complaint; Ex. A). In fact, Plaintiff did not amend her allegations supporting this claim at all. (*See* Ex. A, at 7–8). Thus, just like her initial Complaint, Plaintiff's Amended Complaint does not contain sufficient well-pled averments to support a plausible inference that Life Protect made a "telephone solicitation" and is a "seller", or that she is a "purchaser" under the Texas Business and Commerce Code. Indeed, as argued in section II.D, *supra*, because Plaintiff does not allege that the calls constituted "telephone solicitations"—which Plaintiff cannot because she did not answer the calls or receive a voice message—Life Protect cannot be a "seller," as a "seller" necessarily makes "telephone solicitations" as defined by the statute. *See, e.g.*, *Schulz*, 2020 U.S. Dist. LEXIS 128908, at *6 (finding that a plaintiff cannot allege to have received a "telephone solicitation" if she did not answer a call or receive a voicemail). Furthermore, Plaintiff is not a "purchaser" for similar reasons: because Plaintiff did not answer a call or receive a voice message, she cannot plausibly

allege that these calls were to "solicit" or "offer" her to purchase an item. Despite her opportunity to cure these failures through amendment, she failed to do so. It is therefore clear that Plaintiff cannot allege facts to support her claim under the Texas Business and Commerce Code, and Count III must be dismissed with prejudice.

## <u>CONCLUSION</u>

For the foregoing reasons, Life Protect respectfully requests that Plaintiff's Amended Complaint be dismissed with prejudice.

SUBMITTED this 27th day of August 2020, by:

<div style="margin-left: 40%">

/s/ Matthew C. Arentsen
BROWNSTEIN HYATT FARBER SCHRECK, LLP
Matthew C. Arentsen, *admitted pro hac vice*
Jesse D. Sutz, *admitted pro hac vice*
410 17th Street, Suite 2200
Denver, Colorado 80202
Phone: 303.223.1100
Fax:   303.223.1111
Email:      marentsen@bhfs.com
               jsutz@bhfs.com

*Attorneys in Charge for Defendant*

Christopher M. Jordan
TX State Bar No. 4087817
MUNSCH HARDT KOPF & HARR, P.C.
700 Milam Street, Suite 2700
Houston, Texas 77002
Telephone:  (713) 222-4015
Fax:  (713) 222-5834
Email:      cjordan@munsch.com
*Attorneys for Defendant*

</div>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 27, 2020, I electronically filed the foregoing **MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AND MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Amy L. Bennecoff Ginsburg
Kimmel & Silverman, P.C.
30 East Butler Pike
Ambler, PA 19002
Phone: 215-540-8888
Facsimile: 877-788-2864
Email: aginsburg@creditlaw.com

*Attorneys for Plaintiff*

*/s/ Matthew C. Arentsen*
Matthew C. Arentsen

21426618

25