**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| TERRI PEPPER, | |
|                Plaintiff, | |
| v. | Case No.: 4:20-cv-02154 |
| LIFE PROTECT 24/7, INC., d/b/a LIFE PROTECT 24/7, | |
|                Defendant. | |

## MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT AND MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

Defendant Life Protect 24/7, Inc. ("Life Protect") respectfully moves this Court to dismiss Plaintiff's Second Amended Complaint (the "SAC") (Dkt. 24) under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (the "Motion"). In support of this Motion, Defendant relies on its Memorandum in Support of Motion to Dismiss Plaintiff's Second Amended Complaint set forth as follows:

21902914

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

NATURE AND STAGE OF THE PROCEEDING.................................................. 2

    I.     Procedural History ............................................................................... 2

    II.    Plaintiff's Allegations ......................................................................... 3

STATEMENT OF ISSUES AND STANDARD OF REVIEW .............................. 5

    I.     Whether Plaintiff Lacks Article III Standing Requiring Dismissal under Rule 12(b)(1) for Lack of Subject Matter Jurisdiction ......................... 5

    II.    Whether Plaintiff has Failed to State a Claim for Relief Requiring Dismissal under Rule 12(b)(6)............................................................. 6

ARGUMENT ...................................................................................................... 7

    I.     Rule 12(b)(1) Challenge—Lack of Subject Matter Jurisdiction........... 7

           A.    Summary of Argument .......................................................... 7

           B.    Plaintiff's Purported Injuries Are Not Traceable to Life Protect.............. 7

           C.    Count I also Fails Because § 227(b) of the TCPA was Unconstitutional ................................................................... 9

    II.    Rule 12(b)(6) Challenge—Plaintiff Fails to State a Claim for Relief ................. 11

           A.    Summary of Argument .......................................................... 11

            B.    Plaintiff Does Not Plausibly Allege that Life Protect Initiated Any Calls to Her ................................................................. 12

           C.    Plaintiff Does Not Plausibly Allege that Any Calls She Received Were Made Using an ATDS ..................................... 13

                 i.    An ATDS includes only devices capable of randomly or sequentially storing or producing numbers to be called ............. 13

                 ii.    Plaintiff's allegations evince that the calls she received were not made with an ATDS............................. 16

           D.    Plaintiff Does Not Plausibly Allege She Received Multiple Telephone Solicitations Within a Twelve-Month Period ....................... 18

           E.    Plaintiff Does Not Plausibly Allege the Requisite Elements to Bring a Private Right of Action for an Alleged Violation of § 302.101............................................................................. 20

CONCLUSION................................................................................................. 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ACA Int'l v. FCC*,
  885 F.3d 687 (D.C. Cir. 2018) ...................................................................................13, 14, 15

*Adams v. Safe Home Sec. Inc.*,
  No. 3:18-cv-03098-M, 2019 WL 3428776 (N.D. Tex. July 30, 2019)....................................15

*Allan v. Pa. Higher Educ. Assistance Agency*,
  968 F.3d 567 (6th Cir. 2020) ..................................................................................................15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2008).................................................................................................................15

*Barr v. Am. Ass'n of Pol. Consultants, Inc.*,
  140 S. Ct. 2335 (2020)..........................................................................................................9, 10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...................................................................................................................6

*Bruni v. Hughs*,
  468 F. Supp. 3d 817 (S.D. Tex. 2020) ......................................................................................5

*Creasy v. Charter Commc'ns., Inc.*,
  No. 20-1199 Section F, 2020 WL 5761117 (E.D. La. Sept. 28, 2020)....................5, 9, 10, 11

*Cunningham v. TechStorm, LLC*,
  No. 3:16-CV-2879, 2018 WL 3118400 (N.D. Tex. May 29, 2018) .......................................13

*Duguid v. Facebook, Inc.*,
  926 F.3d 1146 (9th Cir. 2019) ................................................................................................14

*Duran v. La Boom Disco, Inc.*,
  955 F.3d 279 (2nd Cir. 2020)..................................................................................................15

*FW/PBS, Inc. v. Dallas*,
  493 U.S. 215 (1990)...............................................................................................................5, 8

*Gadelhak v. AT&T Servs.*,
  950 F.3d 458 (7th Cir. 2020) ............................................................................................14, 15

*Glasser v. Hilton Grand Vacations Co., LLC*,
  948 F.3d 1301 (11th Cir. 2020) ........................................................................................14, 15, 16

*Hampton v. Barclays Bank Del.*,
No. 18-4071-DDC-ADM, 2020 WL 4698476 (D. Kan. Aug. 13, 2020)................................15

*High v. Karbhari*,
774 F. App'x. 180 (5th Cir. 2019) ........................................................................7

*Dominguez ex. rel Himself v. Yahoo, Inc.*,
894 F.3d 116 (3rd Cir. 2018) .............................................................................14

*Lindenbaum v. Realgy, LLC*,
No. 1:19CV2862, 2020 WL 6361915 (N.D. Ohio Oct. 29 2020)....................................10, 11

*Lone Star Fund V (US), LP v. Barclays Bank PLC*,
594 F.3d 383 (5th Cir. 2010) .............................................................................6

*Maginn v. Norwest Mortg.*,
919 S.W.2d 164 (Tex. App. 1996)........................................................................22

*Marks v. Crunch San Diego, LLC*,
904 F.3d 1041 (9th Cir. 2018) ...........................................................................15

*McGinnis v. Harris Cty.*,
No. H-19-2449, 2019 WL 5787697 (S.D. Tex. Nov. 6, 2019) ..................................6

*McMahon v. Fenves*,
946 F.3d 266 (5th Cir. 2020) .............................................................................5

*McNutt v. General Motors Acceptance Corp.*,
298 U.S. 178 (1936)........................................................................................5

*Morris v. Copart*,
No. 4:15-CV-724, 2016 WL 6608874 (E.D. Tex. Nov. 9, 2016)....................................18, 19

*Neria v. Dish Network L.L.C.*,
No. 6:19-CV-00430-ADA-JCM, 2020 WL 3403074 (W.D. Tex. June 19,
2020) ......................................................................................................12

*Physician Hosps. of Am. v. Sebelius*,
691 F.3d 649 (5th Cir. 2012) .............................................................................5

*Plotkin v. IP Axess Inc., Etc.*,
407 F.3d 690 (5th Cir. 2005) .............................................................................6

*Schulz v. Infogroup, Inc.*,
No. 3:19-CV-1620-N, 2020 WL 4201636 (N.D. Tex. July 21, 2020)........................11, 19, 20

*Suttles v. Facebook, Inc.*,
461 F. Supp. 3d 479 (W.D. Tex. 2020).......................................................... *passim*

*The Inclusive Cmtys. Project, Inc. v. Dep't of Treasury*,
   946 F.3d 649 (5th Cir. 2019) ................................................7

*We-Flex, LLC v. NBSP, Inc.*,
   No. H-11-1078, 2012 WL 1440439 (S.D. Tex. Apr. 25, 2012)................................................6

*Yumilicious Franchise, L.L.C. v. Barrie*,
   819 F.3d 170 (5th Cir. 2016) ................................................21, 22

**Statutes**

47 U.S.C. § 227(a) ................................................13, 18

47 U.S.C. § 227(b) ................................................ *passim*

47 U.S.C. § 227(c) ................................................ *passim*

Tex. Bus. & Com. § 302.100 ................................................22

Tex. Bus. & Com. Ch. 302................................................21, 23

Tex. Bus. & Com. § 17.50 ................................................21

Tex. Bus. & Com. § 302.101 ................................................ *passim*

Tex. Bus. & Com. § 302.302 ................................................21

Tex. Bus. & Com. § 302.303 ................................................21

**Other Authorities**

47 C.F.R. § 64.1200 ................................................12, 18

Fed. R. Civ. P. 12(b)(1)................................................5, 7

Fed. R. Civ. P. 12(b)(6)................................................6, 11

*Make*, Merriam-Webster.com Dictionary, https://www.merriam-
   webster.com/dictionary/make (last accessed July 20, 2020). ................................................12

*P2P Alliance Petition for Clarification*, DA-20-670, ¶ 8 (2020). ................................................15

21902914

## <u>INTRODUCTION</u>

Plaintiff has now had three chances to state an actionable claim under the Telephone Consumer Protection Act (TCPA) or the Texas Business and Commerce Code. Yet, she has again failed to do so. Indeed, the new allegations in her SAC only underscore that all of her claims are fatally deficient and cannot be cured. To be sure, it is apparent that Plaintiff cannot plead that this Court has subject matter jurisdiction and cannot plead the requisite elements of her claims. The SAC, therefore, should be dismissed with prejudice.

Viewed in their most favorable light, Plaintiff's new allegations are that she received a total of five calls in January 2020 supposedly from Life Protect. Plaintiff answered two of these calls. On the first call, she disconnected immediately without speaking with the caller. On the second call, she allegedly spoke with someone—but she does not allege that the individual with whom she spoke actually identified themselves as a representative of Life Protect and she does not allege that the caller attempted to sell her anything during the call. Plaintiff does not allege she answered the last three of the five calls. At most, Plaintiff baldly alleges that the caller was attempting to reach a third party named "James Draper" and that the caller, upon Plaintiff's request, provided her a telephone that when she called it connected her to Life Protect. Plaintiff's allegations are not enough to maintain claims that Life Protect placed automated marketing calls to her.

Instead, the SAC crystallizes that Plaintiff cannot plausibly trace any of the calls to Life Protect, that the calls she received were not made with an ATDS, that she did not receive two or more telephone solicitations in a twelve-month period, and that she cannot bring a claim under the Texas Business and Commerce Code. Accordingly, Plaintiff still lacks Article III standing and fails to state a claim for relief, requiring dismissal under Rules 12(b)(1) and (b)(6). Furthermore, since the filing of Life Protect's Motion to Dismiss Plaintiff's Amended

1

Complaint, federal courts have determined there is no subject matter jurisdiction over § 227(b) TCPA claims for calls made between 2015 and July 6, 2020 because the restriction was unconstitutional during that time. Plaintiff clearly alleges that all calls she received were during this unconstitutional period, and therefore, this Court lacks subject matter jurisdiction over her § 227(b) claim.

Despite multiple amendments, Plaintiff's complaint still fails on its face as a matter of law, making it clear that Plaintiff cannot allege a plausible set of actionable facts. Accordingly, further amendment would be futile, and the SAC should be dismissed with prejudice.

## NATURE AND STAGE OF THE PROCEEDING[1]

## I.   Procedural History.

Plaintiff filed her Complaint on June 18, 2020, (Dkt. 1), and served Life Protect with the Summons and Complaint on July 2, 2020. (Dkt. 6). Life Protect filed a motion to dismiss the initial Complaint on July 23, 2020. (Dkt. 7). In response, Plaintiff filed the Amended Complaint on August 13, 2020. (Dkt. 13). On November 9, 2020, this Court denied Life Protect's Motion to Dismiss Plaintiff's Amended Complaint but ordered Plaintiff to "amend her pleadings to overcome factual deficiencies, if she can do so" because her "amended complaint lacks facts and is simply a recitation of the elements of her causes of action." (Dkt. 23, at 5–6).

In particular, the Court found that certain "specific facts from the plaintiff's experience" were lacking, without which "her suit fails":

> For example, plaintiff does not provide support for or state the following: (a) how she determined Life Protect as the caller; (b) the actual dates and/or number of calls received; (c) whether she listened and/or recorded the calls; (d) how she knew that the calls were made with ATDS; and (e) whether the plaintiffs had previously given consent to the calls.

---

[1] Life Protect accepts as true Plaintiff's well-pled allegations in her SAC as true only for the purpose of this Motion.

(Dkt. 23, at 5).  In response to the Court's order, Plaintiff filed the SAC on November 20, 2020. (Dkt. 24).

Plaintiff's SAC, however, does not answer most of the Court's questions, and to the extent it does, the SAC makes clear Plaintiff does not have a claim for relief. Accordingly, Life Protect files this third Rule 12(b) motion to dismiss. Discovery in this matter has begun pursuant to the Joint Discovery/Case Management Plan (Dkt. 21), and Scheduling Order. (Dkt. 22).

## II.    <u>Plaintiff's Allegations.</u>

Plaintiff is an individual residing in The Woodlands, Texas, who owns a cellular phone. (SAC ¶¶ 5, 10–11). Plaintiff baldly alleges that from January 13 to January 15, 2020, she received five calls from Life Protect "regarding a life alert medical device." (SAC ¶¶ 13, 17).[2] Plaintiff further avers that these calls were made while her number was on the national do-not-call (the "National DNC") registry. (SAC ¶ 24).[3] Notably, although Plaintiff alleges that she received "two or more" *calls* while on the National DNC registry, (SAC ¶ 35), she fails to allege or otherwise identify how many of these calls purportedly contained telephone solicitations. (*See generally*, SAC).

In fact, out of the five calls she allegedly received, Plaintiff alleges she answered only the first two calls. (SAC ¶¶ 18–19). As to the first call, she alleges merely that she "could not speak so she disconnected the call." (SAC ¶ 18). As to the second call, Plaintiff does not describe the call's content other than to allege she "requested a call back number from the representative and she was provided the number 800-244-5487." (SAC ¶ 19). Although Plaintiff contends that she

---

[2] Life Protect denies that it made any calls to Plaintiff and denies that it makes automated telemarketing calls to consumers.

[3] Life Protect notes that Plaintiff's SAC jumps from Paragraph 32 to 23 in Count I, meaning that there are two paragraphs 23, 24, 25, 26, 27, 28, 29, 30, 31, and 32. This citation refers to the first of Plaintiff's Paragraph 24s. Where needed, Life Protect identifies to which Paragraph it is referring.

spoke with "Defendant's representative" during this call, she does not offer any facts indicating how she knows that this individual represented Life Protect, such as that the individual identified himself or herself as a Life Protect employee or that the representative attempted to sell her a Life Protect product. (SAC ¶ 19; *see generally*, SAC). Thus, for the two calls Plaintiff alleges she answered, Plaintiff does not provide any allegations evincing the calls were for solicitation purposes, let alone that the caller was Life Protect and that it attempted to sell Plaintiff a medical alert device during the outbound calls. (S*ee generally*, SAC). Plaintiff does not aver she answered the other three calls and does not aver she received a voicemail in connection with any of the calls—meaning that she only heard the content of one call. (*See* SAC ¶ 20; *see generally*, SAC).

Notwithstanding her claim that she spoke with a Life Protect "representative" on the second January 13, 2020 call, Plaintiff alleges that, on January 23, 2020, she called back the number provided by whomever she spoke with on January 13, 2020, allowing her to ascertain that Life Protect supposedly called her. (SAC ¶ 21). Plaintiff still alleges that the calls were made using an ATDS, (SAC ¶ 22), and adds that she knows the calls were made using an ATDS because she heard a "bloop." (SAC ¶ 23).[4] Significantly, however, she now contends that the calls were targeted calls "to reach a third party named James Draper," (SAC ¶ 15), which belies her conclusion that a telephony system with a random or sequential number generator was used to call her. (SAC ¶ 25). Plaintiff does not allege she received any calls using an artificial or prerecorded voice. (*See generally*, SAC).

Based on these allegations, Plaintiff brings three causes of action against Life Protect:

- Count I—violations of the TCPA's ATDS restrictions, 47 U.S.C. § 227(b)(1)(A)(iii);

---

[4] This refers to the first of Plaintiff's paragraph 23s.

- Count II—violations of the TCPA's National DNC restrictions, 47 U.S.C. § 227(c); and

- Count III—violations of Section 302.101 of the Texas Business and Commerce Code. (SAC at 4–7).

<u>STATEMENT OF ISSUES AND STANDARD OF REVIEW</u>

I.     <u>Whether Plaintiff Lacks Article III Standing Requiring Dismissal under Rule 12(b)(1) for Lack of Subject Matter Jurisdiction.</u>

*This Court must decide whether it has subject matter jurisdiction over this action.* The plaintiff has the burden of demonstrating subject matter jurisdiction. *McMahon v. Fenves*, 946 F.3d 266, 271 (5th Cir. 2020). At the pleading stage, "the plaintiffs' burden is to allege a plausible set of facts establishing jurisdiction." *Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 652 (5th Cir. 2012).

Article III standing is a threshold component of subject matter jurisdiction for which the plaintiff bears the burden. *See, e.g., Bruni v. Hughs*, 468 F. Supp. 3d 817, 823 (S.D. Tex. 2020). To meet this burden, the plaintiff must provide well-pled factual allegations that the defendant engaged in conduct that caused the plaintiff's harm. *Id*. Indeed, "standing cannot be inferred argumentatively from averments in the pleadings, but rather must affirmatively appear in the [pleading]." *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990) (internal citations and quotations omitted). In short, the plaintiff must "'*allege* . . . *facts essential to show jurisdiction*. If [they] fail to make the necessary allegations, [they have] no standing.'" *Id*. (quoting *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936) (emphasis added)). Finally, federal courts lacks subject matter jurisdiction to enforce unconstitutional laws. *Creasy v. Charter Commc'ns., Inc.*, No. 20-1199 Section F, 2020 WL 5761117, at *3 (E.D. La. Sept. 28, 2020).

## II.     Whether Plaintiff has Failed to State a Claim for Relief Requiring Dismissal under Rule 12(b)(6).

*This Court must decide whether Plaintiff has stated a claim for relief.* "The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when ***all well-pleaded facts*** are assumed true and are viewed in the light most favorable to the plaintiff." *Lone Star Fund V (US), LP v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (emphasis added). To that end, courts "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc., Etc.*, 407 F.3d 690, 696 (5th Cir. 2005). Thus, a complaint "must include sufficient facts to indicate the facial plausibility of the claims asserted, raising the 'right to relief above the speculative level.'" *We-Flex, LLC v. NBSP, Inc.*, No. H-11-1078,  2012 WL 1440439, at *4 (S.D. Tex. Apr. 25, 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007)).

In the Rule 12(b)(6) context, "[p]lausibility means that the factual content 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2008)). "Although specifics are not necessary, a complaint must contain enough facts to nudge the claims 'across the line from conceivable to plausible.' In other words, the factual allegations must allow for an inference of '***more than a sheer possibility that a defendant has acted unlawfully***.'" *Id.* (emphasis added) (internal citations omitted). Critically, once the complaint has been amended—but the amendment did not cure the deficiencies in the complaint—further amendment would be futile and dismissal should be ***with prejudice***. *See, e.g.*, *McGinnis v. Harris Cty.*, No. H-19-2449, 2019 WL 5787697, at *3 (S.D. Tex. Nov. 6, 2019).

6

## ARGUMENT

I.  ## Rule 12(b)(1) Challenge—Lack of Subject Matter Jurisdiction.

A.      **Summary of Argument.**

This Court lacks subject matter jurisdiction for two reasons. ***First***, Plaintiff lacks Article III standing to bring her claims because she still has not plausibly traced any of the calls to Life Protect. Plaintiff does not allege she answered a call wherein Life Protect identified itself as the caller, does not allege Life Protect left her a voicemail, and does not offer any other facts plausibly identifying Life Protect as the caller. All of her claims, therefore, must be dismissed. ***Second***, even if this Court finds that Plaintiff has standing (which she does not), this Court lacks subject matter jurisdiction over Plaintiff's claim under § 227(b) of the TCPA (Count I) because that provision of the TCPA was unconstitutional when the calls were made.

B.      **Plaintiff's Purported Injuries Are Not Traceable to Life Protect.**

Plaintiff provides no allegations that plausibly identify Life Protect as the caller for any of the five calls alleged. Accordingly, her SAC should be dismissed with prejudice.

To satisfy the second element of the standing inquiry, the injury must be fairly traceable to specific misconduct engaged in by a specific defendant. *See High v. Karbhari*, 774 F. App'x. 180, 183 (5th Cir. 2019). At the pleading stage, the plaintiff must sufficiently allege—with well-pled factual averments—that it was ***the defendant's conduct*** that caused the plaintiff's harm. *See The Inclusive Cmtys. Project, Inc. v. Dep't of Treasury*, 946 F.3d 649, 655 (5th Cir. 2019) (explaining that the plaintiff's burden is to allege a plausible causal link between the defendant's conduct and the plaintiff's harm).

Here, Plaintiff avers that she answered two of the five alleged calls at issue, but she only spoke with an individual on one of these calls. (SAC ¶¶ 18–20). Despite averring that on this call she spoke with a Life Protect representative, she offers no facts to support that the individual

with whom she spoke actually represented Life Protect. (*See generally*, SAC). Indeed, Plaintiff does not allege that the individual identified himself or herself as working for Life Protect, or conveyed any message that he or she was calling on Life Protect's behalf. (*See generally,* SAC). Furthermore, on the three calls she apparently did not answer, Plaintiff does not allege that the caller left a voicemail or otherwise identified itself as calling on Life Protect's behalf. (*See* SAC ¶ 20). In sum, Plaintiff pleads no facts plausibly demonstrating that Life Protect called her.

Instead, Plaintiff's own allegations undermine her efforts to trace the calls to Life Protect. Plaintiff avers that, on the second January 13th call, she requested a call back number from the caller, which he then provided. (SAC ¶ 19). She asserts that 10 days later she called this number and was connected to Life Protect. (SAC ¶ 21). But if Plaintiff knew that a Life Protect representative called her on January 13th (and then three additional times), why would she need to call back the number provided to ascertain the caller? Plaintiff does not answer this crucial question. To be sure, the fact that Plaintiff had to call the number back to determine who called her serves to corroborate that the January 13th caller did *not* identify himself or herself as a Life Protect representative. Tellingly, Plaintiff also does not identify the telephone numbers from which she received any of the five calls and does not claim that those numbers are the same as the number she was provided and later called. Therefore, Plaintiff's allegations that she received five calls ***from Life Protect*** between January 13 and January 15, 2020, are not plausible and do not affirmatively establish that she has standing. *See FW/PBS, Inc. v. Dallas*, 493 U.S. at 232 (holding that standing cannot be inferred from averments in the pleading but rather must be affirmatively established).

21902914

Because it is now clear that Plaintiff lacks any facts to support a plausible, non-speculative conclusion that Life Protect called her, Plaintiff's SAC must be dismissed with prejudice for lack of subject matter jurisdiction.

### C.    Count I also Fails Because § 227(b) of the TCPA was Unconstitutional.

In addition to Plaintiff's lack of Article III standing, this Court lacks subject matter jurisdiction over Count I because § 227(b)(1)(A)(iii) of the TCPA was unconstitutional from 2015 through July 6, 2020, and all of the alleged calls to Plaintiff occurred in January 2020.

In 2015, Congress amended § 227(b)(1)(A)(iii) by carving out an exception from the TCPA's general prohibition on robocalls to cell phones, thereby allowing robocalls be made to collect a government debt ("2015 Amendment"). *See generally*, *Barr v. Am. Ass'n of Pol. Consultants*, *Inc*., 140 S. Ct. 2335, 2344–45 (2020) ("*AAPC*"). That is, the 2015 Amendment took § 227(b)(1)(A)(iii)—which was previously content neutral—and drew a content-based distinction on whether the call was made to collect a government debt and permitted robocalls to collect a government debt. *Id*. at 2346.

In *AAPC*, the petitioners challenged § 227(b)(1)(A)(iii), as amended, arguing that the 2015 Amendment violated their First Amendment rights because the 2015 Amendment transformed § 227(b)(1)(A)(iii) into a content-based restriction on speech, which failed strict scrutiny. *Id*. After raising arguments that § 227(b)(1)(A)(iii), as amended, was not a content-based restriction on speech—which the Court rejected—the government conceded that it lacked a sufficient justification for the exception, and therefore, the amendment failed strict scrutiny. *Id*. at 2347. Consequently, as a remedy to restore § 227(b)(1)(A)(iii) to constitutional health, on July 6, 2020, the *AAPC* Court severed the offending government-debt exception. *Id*. at 2353–54.

In the wake of *AAPC*, an Eastern District of Louisiana court determined that—because *the entirety* of § 227(b)(1)(A)(iii) was unconstitutional from the 2015 Amendment through

9

*AAPC*—federal courts lack subject matter jurisdiction over claims brought under § 227(b)(1)(A)(iii) for calls made during those five years. *See generally, Creasy*, 2020 WL 5761117. The *Creasy* court rejected the plaintiffs' argument that the portion of § 227(b)(1)(A)(iii) restricting robocalls made for purposes other than to collect a government-backed debt remained constitutional during this time, concluding that:

> [W]hile the plaintiffs argue that the Court's severance of the exception has no bearing on the constitutionality of the rule, the exception and the rule are in fact inextricably intertwined for the purposes of any reasonable analysis. Simply put, a restriction cannot possibly be content-based if it does not treat different categories of content differently; an exception cannot be unconstitutionally discriminatory without reference to the broader rule in which it appears.

*Id*. at *5. Thus, the court acknowledged that "the entirety of the pre-severance version of § 227(b)(1)(A)(iii) is void because it itself was repugnant to the Constitution[.]" *Id*. And as relevant here, the *Creasy* court concluded "the unconstitutional amended version of § 227(b)(1)(A)(iii) is what applied to [defendant] at the time of the challenged communications at issue, and that fact deprives the Court of subject matter jurisdiction to adjudicate [defendant's] liability with regard to such communications." *Id*. at *6.

The Eastern District of Louisiana is not alone in reaching this conclusion. A court in the Northern District of Ohio recently agreed with *Creasy*, holding federal courts lack subject matter jurisdiction to enforce alleged § 227(b)(1)(A)(iii) violations from the date of the 2015 Amendment through *AAPC*. *See generally*, *Lindenbaum v. Realgy, LLC*, No. 1:19CV2862, 2020 WL 6361915, at *5–7 (N.D. Ohio Oct. 29 2020) ("The Court cannot wave a magic wand and make that constitutional violation disappear. Because the statute at issue was unconstitutional at the time of the alleged violations, this Court lacks jurisdiction over this matter."). To date, no federal court has disagreed with *Creasy* or *Lindenbaum*.

Here, Plaintiff alleges she received five calls from Life Protect—all of which occurred in January 2020. (SAC ¶¶ 17–20). Plaintiff contends that all of these calls were made with an ATDS and, therefore, that they violated § 227(b) of the TCPA. (SAC ¶¶ 22, 31–31). Because all of the calls at issue were allegedly made while § 227(b) was unconstitutional, this Court is without subject matter jurisdiction over Count I. *Lindenbaum*, 2020 WL 6361915, at *5–7; *Creasy*, 2020 WL 5761117, at *5–6.

II.    **Rule 12(b)(6) Challenge—Plaintiff Fails to State a Claim for Relief.**

    A.    **Summary of Argument.**

All three of Plaintiff's claims fail for similar reasons to why her injuries, if any, are not traceable to Life Protect: *Plaintiff fails to plausibly allege that Life Protect "initiated" or "made" the calls to her*.

Further, Plaintiff's two TCPA claims also fail because Plaintiff still does not allege: (1) facts supporting an inference that calls to her were made using an ATDS, and (2) facts supporting an inference that at least two of the calls involved telephone solicitations in violation of the National DNC regulations. To the contrary, Plaintiff now pleads her TCPA claims as directly analogous to those dismissed in *Suttles v. Facebook, Inc.*, 461 F. Supp. 3d 479 (W.D. Tex. 2020) (dismissing a § 227(b) claim with prejudice when the plaintiff alleged targeted calls), and *Schulz v. Infogroup, Inc.*, No. 3:19-CV-1620-N, 2020 WL 4201636 (N.D. Tex. July 21, 2020) (dismissing a § 227(c) when the plaintiff failed to allege that he heard a solicitation on two or more calls). Finally, Plaintiff's claim under the Texas Business and Commerce Code fails as Plaintiff does not allege the elements necessary to sustain a private right of action.

11

**B.      Plaintiff Does Not Plausibly Allege that Life Protect Initiated Any Calls to Her.**

Plaintiff's claims all fail because she does not, and clearly cannot, offer plausible allegations that Life Protect called her. All of Plaintiff's claims hinge on alleging facts sufficient to support a more-than-speculative inference that Life Protect actually ***initiated*** or ***made*** the calls at issue. *See* 47 U.S.C. § 227(b)(1)(A)(iii) (rendering it unlawful to "make any call" to a cell phone using an ATDS); 47 U.S.C. § 227(c)(5) (making it unlawful under 47 CFR § 64.1200(c)(2) to "initiate any telephone solicitation" to a residential telephone on the National DNC); Texas Bus. & Com. § 302.101 (prohibiting sellers from "mak[ing] . . . a telephone solicitation to a purchaser located in this state" without registering). Thus, among other elements, to state a viable claim under any of these laws, a plaintiff must sufficiently allege that the defendant was the caller. *See, e.g.*, *Neria v. Dish Network L.L.C.*, No. 6:19-CV-00430-ADA-JCM, 2020 WL 3403074, at *3 (W.D. Tex. June 19, 2020) ("[a] plaintiff asserting a claim under the TCPA must prove: (1) defendant ***made a call to a cellular telephone*** . . ." (emphasis added)).[5]

Here, for the same reasons argued in *supra*, section I.B., Plaintiff does not plausibly allege that Life Protect was the caller. Further, considering Plaintiff has again failed to allege any details for four of the calls and has not alleged the caller identified itself as from Life Protect or attempted to sell her a Life Protect produce on the other call, it is clear at this point that she cannot offer any facts plausibly supporting that Life Protect ***initiated*** or ***made*** the calls. For this reason alone, her claims all fail and the Amended Complaint must be dismissed with prejudice.

---

[5] Undersigned counsel has not been able to locate an interpretation of the term "making" in the Texas Business and Commerce Code. However, this term should be read in accordance with its plain meaning. "Make" is defined as "to bring into being[.]" *Make*, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/make (last accessed July 20, 2020). Thus, "making" a call under Texas law would be interpreted the same as the TCPA—to cause the call to occur.

C.  **Plaintiff Does Not Plausibly Allege that Any Calls She Received Were Made Using an ATDS.**

i.  **An ATDS includes only devices capable of randomly or sequentially storing or producing numbers to be called.**

Plaintiff's SAC avers that the calls she received were targeted to a specific individual. (SAC ¶ 15). These allegations evince that the calls were not made with an ATDS because under the strict statutory definition of an ATDS (which has been adopted by other district courts in this circuit), an ATDS must have the capacity to randomly or sequentially store or produce the numbers to be called. Calling specific individuals thus is inconsistent with the use of an ATDS, and Plaintiff's Count I fails.

As relevant here, absent an emergency or prior express consent, 47 U.S.C. § 227(b)(1)(A)(iii) makes it unlawful for a party to make a call to a cellular phone *using an automatic telephone dialing system*. Therefore, "[t]o state a claim under the TCPA for calls made to a cellular phone, a plaintiff is required to allege that a call was made to a cell or wireless phone by the use of any automatic dialing system[.]" *Cunningham v. TechStorm, LLC*, No. 3:16-CV-2879, 2018 WL 3118400, at *3 (N.D. Tex. May 29, 2018). An ATDS is defined as "equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. § 227(a)(1)(A)-(B).

In 2018, the D.C. Circuit set aside the Federal Communications Commission's ("FCC") interpretation of an ATDS. *ACA Int'l v. FCC*, 885 F.3d 687, 699 (D.C. Cir. 2018). In particular, the D.C. Circuit took issue with the fact that "a straightforward reading of the [FCC's] ruling invites the conclusion that all smartphones are autodialers[.]" *Id.* The D.C. Circuit emphasized that such an outcome would be an "unreasonable, and impermissible, interpretation of the statute's reach." *Id.* at 697. In the end, the D.C. Circuit invalidated the FCC's prior

13

interpretations of an ATDS, including the FCC's 2015 interpretation that posited that an ATDS could include devices that had the capacity (*i.e.* the future potential) to function as an autodialer. *Id*. at 696–700.

Subsequent to *ACA International*, there is a split of authority over the proper interpretation of the ATDS definition.[6] The better-reasoned definition is that an ATDS includes only those devices: (1) with the capacity to store numbers to be called using a random or sequential number generator and to dial such numbers; or (2) with the capacity to produce telephone numbers to be called using a random or sequential number generator and to dial such numbers. In other words, the clause "using a random or sequential number generator" modifies both the verbs to "store" and "produce." Accordingly, to be an autodialer, a telephony system or device ***must*** be capable of random or sequential number generation.

The Third Circuit was the first federal circuit court of appeals post-*ACA International* to adopt a strict statutory interpretation of an ATDS, concluding that the modifier "using a random or sequential number generator" necessarily modified both the verbs "to store" and "to produce." *See Dominguez ex. rel Himself v. Yahoo, Inc.,* 894 F.3d 116, 120–21 (3rd Cir. 2018) (granting summary judgment where there was no issue of material fact as to whether the technology at issue could randomly or sequentially generate the numbers to be called). Expanding on the *Dominguez* holding, the Seventh and Eleventh Circuits agreed with the Third Circuit, both relying on a common sense grammatical reading of the statute that when two conjoined verbs (here, "to store or produce") share a direct object (here, "numbers to be called"), the modifier modifies both verbs in the sequence (in this case, meaning that the numbers to be called must be

---

[6] In fact, the Supreme Court may determine the proper meaning of an ATDS this term and resolve this circuit split. *See Duguid v. Facebook, Inc.,* 926 F.3d 1146 (9th Cir. 2019), *cert granted  Facebook, Inc. v. Duguid*, Docket No. 19-511 (granting certiorari for the October 2020 term as to the proper definition of an autodialer).

21902914

stored or produced using a random or sequential number generator). *Gadelhak v. AT&T Servs.*, 950 F.3d 458, 464–69 (7th Cir. 2020); *Glasser v. Hilton Grand Vacations Co.*, *LLC*, 948 F.3d 1301, 1306–12 (11th Cir. 2020). In other words, as succinctly stated by the Seventh Circuit in *Gadelhak* "***the capacity to generate random or sequential numbers is necessary to the statutory definition*** [of an ATDS]." 950 F.3d at 469 (emphasis added). The FCC recently agreed, explaining "whether the calling platform or equipment is an autodialer turns on whether such equipment ***is capable of dialing random or sequential telephone numbers without human intervention***." *P2P Alliance Petition for Clarification,* DA-20-670, ¶ 8 (2020) (emphasis added).[7]

While the Fifth Circuit has not addressed the definition of an ATDS subsequent to the D.C. Circuit setting aside the FCC's interpretation in 2018, federal district courts in Texas have. And they have agreed with the Third, Seventh, and Eleventh Circuits' interpretation. *See Suttles v. Facebook, Inc.*, 461 F. Supp. 3d 479, at 484–87 (W.D. Tex. 2020); *Adams v. Safe Home Sec. Inc.*, No. 3:18-cv-03098-M, 2019 WL 3428776, at *2–4 (N.D. Tex. July 30, 2019). The court in *Suttles*—armed with the panoply of competing interpretations between the Third, Seventh, and Eleventh Circuits on the one hand, and the Second and Ninth on the other—in a detailed and well-reasoned decision, joined the textual and grammatically straightforward reading of an

---

[7] The Second, Sixth, and Ninth Circuits interpret the term ATDS more broadly, finding that any device with the capacity to store numbers to be called and to call such numbers is an autodialer. *See Allan v. Pa. Higher Educ. Assistance Agency*, 968 F.3d 567 (6th Cir. 2020); *Duran v. La Boom Disco, Inc.,* 955 F.3d 279 (2nd Cir. 2020); *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018). This view is not supported by the plain language of the statute or its underlying purpose or legislative history. Moreover, these definitions are in essence the definition of an ATDS adopted by the FCC that the D.C. Circuit invalidated in *ACA International*. The District of Kansas has also weighed in—adopting the narrow definition of an ATDS—and predicting that the Tenth Circuit would likely side with the Third, Seventh, and Eleventh Circuits. *See Hampton v. Barclays Bank Del*., No. 18-4071-DDC-ADM, 2020 WL 4698476, *24–30 (D. Kan. Aug. 13, 2020).This would tip the scales with four circuits adopting the narrow definition, and three adopting the broad definition.

autodialer adopted by the Third, Seventh, and Eleventh Circuits. 461 F. Supp. 3d at 484–87. Indeed, the court in *Suttles* found "[t]he court agrees that a device must randomly or sequentially generate—not just store—numbers to be considered an ATDS under the Act." *Id*. at 486. Counsel was unable to locate any district court opinions in the Fifth Circuit that follow the Second, Ninth, and now Sixth Circuit's approach.

Joining the Western and Northern Districts of Texas's (along with the Third, Seventh, and Eleventh Circuits') interpretation of an ATDS would create comity amongst district courts in this Circuit. In addition, this reading is grammatically straightforward, and as examined by the *Suttles* court and the Seventh and Eleventh Circuits, squares with the dialing technology in place at the time of the TCPA's enactment. *See, e.g.*, *Glasser*, 948 F.3d at 1308–09 (providing a detailed overview that, at the time of the TCPA's passing, dialing technology that could *not* store or produce numbers randomly or sequentially but could call numbers from preprogrammed lists were known—but rejected—from being within the TCPA's purview).

This Court, therefore, should hold that an actionable TCPA autodialer violation requires that calls to Plaintiff must have been made with a device that can randomly or sequentially store or produce the numbers to be called. Under this definition, Plaintiff's ATDS claim fails.

    ii.  **Plaintiff's allegations evince that the calls she received were not made with an ATDS.**

Despite now alleging that she heard a "bloop," allowing her to discern that the calls were made using an ATDS, (SAC ¶ 23), Plaintiff also alleges that the calls were targeted to a specific individual. (SAC ¶ 15). Calls that are made to connect with a specific individual demonstrate that an ATDS was not used, requiring dismissal as a matter of law.

Earlier this year, the Western District of Texas addressed essentially the same allegations that Plaintiff makes here. The *Suttles* court found that these allegations evince no ATDS was

used as a matter of law. *See generally*, *Suttles*, 461 F. Supp. 3d 479. In *Suttles*, the plaintiff alleged to have received 32 unsolicited texts from Facebook that encouraged him and third parties named Hannah, Abel, and Sandra to perform certain acts. 461 F. Supp. 3d at 481. Plaintiff brought a claim under § 227(b) for violations of the TCPA's ATDS restrictions. *Id*. The Western District found this claim failed. *Id*. at 484–87. After holding the narrow ATDS definition was proper, the court found the plaintiff's allegations that an ATDS was used were deficient as a matter of law. *Id*. at 486–87. The court emphasized "Suttles has pleaded the opposite of random or sequential dialing by alleging that he received targeted messages directed to him and 'third parties' named 'Hannah,' 'Abel,' and 'Sandra.' Allegations of directly targeting specific individuals weigh against an inference that an ATDS was used." *Id*. at 487. The court even went further, explaining its dismissal with prejudice:

> The court appreciates the difficulty Suttles faces in knowing the type of calling system used without the benefit of discovery, but the facts as they are already known suggest that an ATDS was not used. The facts as described in Suttles's pleadings do not give rise to an inference that a device with 'random or sequential' functionality was used, but rather a device that directly targeted specific individuals. The court concludes that the ATDS definition employed by the Third, Seventh, and Eleventh Circuits is correct, and applying the definition defeats Suttles's claim that an ATDS was used. The court will, therefore, dismiss Suttles's second claim with prejudice.

*Id*.

Here, like the Hannah, Abel, and Sandra in *Suttles*, there is a James Draper—who Plaintiff avers that Life Protect was attempting to reach. (SAC ¶ 15). And just like in *Suttles*, this allegation evinces that whatever calls Plaintiff received were from a device that "directly targeted specific individuals." 461 F. Supp. 3d at 487. In other words, the calls ***could not*** have been from a device that randomly or sequentially dialed Plaintiff's number as the caller targeted Mr. Draper. Such allegations demonstrate the opposite of random or sequential dialing and are

17

incompatible with the use of an ATDS. Consequently, Plaintiff's § 227(b) claim fails and should be dismissed with prejudice.

### D.      Plaintiff Does Not Plausibly Allege She Received Multiple Telephone Solicitations Within a Twelve-Month Period.

Plaintiff still does not allege that she received more than one *telephone solicitation* in a twelve-month period. (*See generally*, SAC). In fact, Plaintiff avers that she answered two of the five calls. One of which she disconnected immediately without speaking with the caller, and for the other, she not allege any facts demonstrating it contained a telephone solicitation. (SAC ¶¶ 18–19; *see generally*, SAC). As to the last three calls, Plaintiff does not allege a voicemail was left—meaning she has no way of knowing whether these were telemarketing calls. (SAC ¶ 20; *see generally*, SAC). Her § 227(c) claim therefore fails because she has not plausibly alleged she received two or more telephone solicitations in a twelve-month period.

Claims under 47 U.S.C. § 227(c)(5) are really claims under the FCC's implementing regulations, which are codified in 47 C.F.R. § 64.1200. Under 47 C.F.R. § 64.1200(c)(2), it is unlawful to make "telephone solicitations" to "a residential telephone subscriber" whose phone number appears on the National DNC registry. A "telephone solicitation" is defined in the TCPA as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person[.]" 47 U.S.C. § 227(a)(4); 47 C.F.R. § 64.1200(f)(14). Thus, when a plaintiff alleges that she received telephone solicitations in violation of 47 C.F.R. § 64.1200(c)(2), "to survive a motion to dismiss, [Plaintiff] **must allege facts that indicate the [calls] at issue were for that purpose**." *Suttles*, 461 F. Supp. 3d at 482 (emphasis added); *see also Morris v. Copart*, No. 4:15-CV-724, 2016 WL 6608874, *8–10 (E.D. Tex. Nov. 9, 2016) (granting summary judgment for defendant on a claim for a violation of DNC regulations when there was no triable issue of fact as to whether the calls

encouraged the purchase or rental of property, goods, or services). A person has a private right of action only where she has received ***more than one*** telephone solicitation in a twelve-month period while her number was on the National DNC. 47 U.S.C. § 227(c)(5).

Here, like her § 227(b) claim, Plaintiff has re-pleaded her § 227(c) claim in a way that fails in the Fifth Circuit. In July, the Northern District of Texas dismissed a claim that was directly analogous to Plaintiff's on the grounds that the plaintiff had failed to sufficiently allege the calls constituted telephone solicitations. *See generally*, *Schulz v. Infogroup, Inc.*, No. 3:19-CV-1620-N, 2020 WL 4201636 (N.D. Tex. July 21, 2020). In *Schulz*, the plaintiff did not allege he heard or received any specific messages from the caller; instead, the plaintiff alleged that after receiving calls from a certain number, he called the number back and was connected to an automated marketing message from defendant. *Id*. at *1. The defendant argued—and the court agreed—that these allegations, standing alone, were not sufficient to aver that the calls ***he received*** constituted telemarketing because the plaintiff did not allege to know their content. *Id*. at *2. Noting that the TCPA only prohibits calls ***initiated*** with a telemarketing purpose, the court in *Schulz* found that reverse engineering a call's purported telemarking purpose by calling a number back and hearing a message relating to a product or service is insufficient to allege that the calls were ***initiated*** for a telemarketing purpose. *Id*. ("Because the TCPA specifically applies to calls ***initiated by defendants to residential telephone lines, not the inverse, messages [plaintiff] heard when he affirmatively contacted [defendant] are not TCPA violations and can only provide context for [defendant's] calls to [plaintiff].***" (emphasis added)).

Here, just like in *Schulz*, Plaintiff does not allege how many calls she received containing telephone solicitations. (*See generally*, SAC). Indeed, while Plaintiff avers that Life Protect

19

"called Plaintiff on two or more occasions during a single calendar year" she does not allege that these calls contained solicitations. (SAC ¶ 35). Nor could she.

Boiled down, Plaintiff alleges she received five calls in January 2020. (SAC ¶ 17). Plaintiff notes that she answered two of these calls, one of which she immediately hung up on (and therefore did not hear a message) and the second of which she does not allege to have heard a marketing message. (SAC ¶¶ 18, 19). For the remaining three calls, Plaintiff does not allege to have answered these calls or received a voice message. (*See* SAC ¶ 20). Thus, at best, Plaintiff heard the content of one of the five calls. Critically, Plaintiff ***does not allege*** that she heard any marketing message on this call, (*see generally*, SAC), but even if she did, that would not demonstrate that she received ***two or more*** telephone solicitations in a twelve-month period.

Importantly, although Plaintiff alleges that she discerned the calls were from Life Protect by calling the number back, (SAC ¶ 21), which likely forms the basis for her conclusory (and erroneous) assertion that the calls were made by Life Protect for solicitation purposes, this sort of reverse engineering is insufficient to state a claim under *Schulz*. Rather, Plaintiff must aver that she heard telephone solicitations on two or more of the calls ***she received***. She has not—and it is plain she cannot—requiring dismissal with prejudice. *Schulz*, 2020 WL 4201636, at *3.

### E.     Plaintiff Does Not Plausibly Allege the Requisite Elements to Bring a Private Right of Action for an Alleged Violation of § 302.101.

Section 302.101 provides that "[a] seller may not make a telephone solicitation from a location in this state or to a purchaser located in this state unless the seller holds a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Com. Code § 302.101. Plaintiff alleges that Life Protect violated this provision "when its representatives engaged in continuous and repetitive telephone solicitation of Plaintiff without obtaining a registration certificate from the Office of the Secretary of State." (SAC ¶ 41).

Plaintiff, however, fails to allege the necessary elements for § 302.101 claim—particularly detrimental reliance.

Plaintiff cites § 302.302(a) and (d) as the basis for her private right of action. (SAC ¶ 42). However, § 302.302 merely enumerates remedies and penalties for a violation of Chapter 302 of the Texas Business and Commerce Code. It is does not provide a consumer with a private right of action for a violation of § 302.101 (or any other provision of Chapter 302).

Instead, § 302.303 of the Texas Business and Commerce Code provides consumers with a private right of action for a violation of Chapter 302—including § 302.101. Specifically, § 302.303 provides that a violation of Chapter 302 is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17 (of the Texas Business and Commerce Code), and further provides that a private right of action for a violation of Chapter 302 may be maintained as an action under Subchapter E, Chapter 17. Plaintiff, however, has failed to state the requisite elements of a claim under Subchapter E, Chapter 17.

Pursuant to § 17.50(a)(1)–(4) of the Texas Business and Commerce Code, a consumer may bring an action for a false, misleading, or deceptive act or practice that: (1) the consumer relies on to her detriment; (2) is for a breach of warranty; (3) is for any unconscionable action (or course of action); or (4) is for violations of Chapter 541 of the insurance code. A consumer must also allege to have suffered economic damages or damages for mental anguish. Tex. Bus. & Com. Code § 17.50(a).  Here, Plaintiff does not allege any breach of warranty, unconscionable act, or violation of Chapter 541 of the insurance code; therefore, she would need to allege the elements of § 17.50(a)(1) to state a claim for relief. She has not.

The elements of a claim under § 17.50(a)(1)—and in turn § 302.101—are: (1) the plaintiff is a consumer; (2) detrimental reliance on the alleged deceptive false, misleading or

deceptive act; and (3) injury. *See Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 176 (5th Cir. 2016). Importantly, to qualify as a consumer, the plaintiff must have sought to acquire the goods or services at issue, and the purchase of goods or services must be the primary reason for the transaction. *Maginn v. Norwest Mortg.*, 919 S.W.2d 164, 166 (Tex. App. 1996).

Here, none of these elements are met. Primarily, Plaintiff does not allege that she sought to purchase any goods or services from Life Protect. (*See generally*, SAC). To the contrary, Plaintiff avers that she had no interest in making a purchase from Life Protect. (SAC ¶ 16). Additionally, Plaintiff does allege she relied on any action by Life Protect, and she certainly does not allege she relied on any representation regarding Life Protect's status on a telemarketing registry. (*See generally*, SAC). Moreover, Plaintiff does not allege to have suffered any economic damages or mental anguish from Life Protect's purported failure to register as a telemarketer. (*See generally*, SAC).

In addition to failing to state the elements of her private right of action, Plaintiff does not even allege that Section 302.101 was violated. Section 302.101 of the Texas Business and Commerce Code prohibits statutorily-defined "sellers" from making statutorily-defined "telephone solicitations" to statutorily-defined "purchasers" without obtaining a registration certificate. A "seller" is a "person who makes a ***telephone solicitation*** on the person's own behalf." Tex. Bus. & Com. § 302.100(5) (emphasis added). A "purchaser" is a person who "(A) is solicited to become or becomes obligated for the purchase or rental of an item; or (B) is offered an opportunity to claim or receive an item." Tex. Bus. & Com. § 302.100(3). A "telephone solicitation" is "a telephone call ***a seller*** . . . initiates to induce a person to purchase, rent, claim, or receive an item." Tex. Bus. & Com. § 302.100(7) (emphasis added).

22

Plaintiff still fails to address how these statutory definitions are met in her SAC. (*See generally*, SAC). Thus, just like her initial Complaint and Amended Complaint, Plaintiff's SAC does not contain sufficient well-pled averments to support a plausible inference that Life Protect made a "telephone solicitation" and is a "seller", or that she is a "purchaser" as defined by the Texas Business and Commerce Code. Indeed, as argued in section II.D, *supra*, Plaintiff cannot allege that any of the calls actually contained solicitations because she only heard a message on one of the five calls, and she does not allege that she heard a solicitation on this call. (*See* SAC ¶19; *see generally*, SAC). Thus, Life Protect cannot be a "seller," as a "seller" necessarily makes "telephone solicitations" as defined by the statute. Furthermore, Plaintiff is not a "purchaser" for similar reasons: because Plaintiff does not allege that on the one call she heard a message that the caller tried to sell her anything, she cannot plausibly allege that these calls were to "solicit" or "offer" her to purchase an item.

Thus, not only has Plaintiff failed to state the requisite elements to maintain a private right of action under Chapter 302, she fails to allege that Section 302.101 of the Texas Business and Commerce Code was violated. Therefore, she cannot state a claim under Chapter 302 of the Texas Business and Commerce Code, and this claim must be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Life Protect respectfully requests that Plaintiff's Second Amended Complaint be dismissed with prejudice.

23

21902914

SUBMITTED this 4th day of December 2020, by:

/s/ Matthew C. Arentsen

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Matthew C. Arentsen, *admitted pro hac vice*
Jesse D. Sutz, *admitted pro hac vice*
410 17th Street, Suite 2200
Denver, Colorado 80202
Phone: 303.223.1100
Fax:   303.223.1111
Email:      marentsen@bhfs.com
              jsutz@bhfs.com

*Attorneys in Charge for Defendant*

Christopher M. Jordan
TX State Bar No. 4087817
MUNSCH HARDT KOPF & HARR, P.C.
700 Milam Street, Suite 2700
Houston, Texas 77002
Telephone:  (713) 222-4015
Fax:  (713) 222-5834
Email:      cjordan@munsch.com
*Attorneys for Defendant*

24

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on December 4, 2020, I electronically filed the foregoing **MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT AND MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Amy L. Bennecoff Ginsburg
Kimmel & Silverman, P.C.
30 East Butler Pike
Ambler, PA 19002
Phone: 215-540-8888
Facsimile: 877-788-2864
Email: aginsburg@creditlaw.com

*Attorneys for Plaintiff*

*/s/ Matthew C. Arentsen*
Matthew C. Arentsen

25

21902914