**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| **Terri Pepper**, <br><br> Plaintiff, <br><br> v. <br><br> **Life Protect 24/7, Inc. d/b/a Life Protect 24/7,** <br><br> Defendant. | Case No. 4:20-cv-02154 |

AND NOW, Terri Pepper ("Plaintiff" or "Ms. Pepper"), by and through her attorneys, Kimmel & Silverman, P.C., hereby files her opposition to the motion to dismiss the Second Amended Complaint of Defendant Life Protect 24/7, Inc. d/b/a Life Protect 24/7 ("Defendant" or "Life Protect"):

## I.   STATEMENT OF RELEVANT FACTS

At all times relevant hereto, Ms. Pepper was a resident of The Woodlands Texas. (Sec. Am. Compl., ¶ 5.) Defendant is a business with headquarters in Virginia. (Sec. Am. Compl., ¶ 7.)

Seeking refuge from robo-calls, telemarketers and solicitors, Plaintiff signed up for the Federal Do-Not-Call Registry in 2004. (Sec. Am. Compl., ¶ 24.) Despite the fact that Plaintiff's cellular telephone number was on the Do-Not-Call list, and despite the fact that Plaintiff never consented to receiving automated calls or any calls from Defendant, Defendant placed at least five (5) automated calls to Plaintiff's cell phone, apparently to solicit its medical alert device. (Sec. Am. Compl., ¶¶ 15-21.) The calls at issue were made: January 13, 2020 at 9:54AM; January 13, 2020 at 1:50PM; January 14, 2020 at 9:20AM; January 14, 1010 at 2:59PM; and January 15, 2020 at 11:17AM. (Id., ¶ 17.)

1

After a call from Life Protect, in order to ascertain the identity of the party calling her cell phone, Ms. Pepper asked for the call-back number, and was provided with the number 800-244-5487, which she confirmed belonged to Life Protect.  (Id., ¶¶ 19-21.)

Because the Defendant violated Ms. Pepper's right to be free from unwanted robocalls, Plaintiff filed suit against Defendant under the federal Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA") and § 302.101 of the Texas Business & Commercial Code.

## II.     ARGUMENT

### A.  Standard

#### 1.   Motion to Dismiss Under Fed. R. Civ. P. 12(b)(1).

A federal court has an independent duty, at any level of the proceedings, to determine whether it properly has subject matter jurisdiction over a case. Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583, 119 S. Ct. 1563, 143 L. Ed. 2d 760 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative even at the highest level.");

A Rule 12(b)(1) motion may present either a facial or a factual attack on the complaint. Lawrence v. Dunbar, 919 F.2d 1525, 1528-29 (11th Cir. 1990). Facial attacks are based on the allegations of jurisdiction in the complaint, and the court takes the allegations in the complaint as true. *Id.* at 1529. Factual attacks under Rule 12(b)(1) "challenge the existence of subject matter jurisdiction in fact." *Id.* In such an instance, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* (quoting Williamson v. Tucker, 645 F.2d 404, 412-13 (5th Cir. 1981). This means there is "no presumptive truthfulness [that] attaches to [the] plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Id.

2

However, the standard for factual attacks under Rule 12(b)(1) changes when the jurisdictional challenge implicates the merits of the plaintiff's claim. Id. This occurs when "a statute provides the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief." Garcia, 104 F.3d at 1262. If so, courts must "find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case," Lawrence, 919 F.2d at 1529, using "the standards associated with a 12(b)(6) motion or Rule 56 motion for summary judgment." Garcia, 104 F.3d at 1266-67.

    2. Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)

On a motion to dismiss, the Court must accept as true all facts alleged and draw all inferences therefrom in the light most favorable to the non-moving party.

"[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citation omitted). The alleged facts must "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570.

"[W]here the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not ' show[n]'—'that the pleader is entitled to relief.'" Ashcroft v. Iqbal, 556 U.S. 662, 678-79, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). In Iqbal, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." Iqbal, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine

if they plausibly suggest an entitlement to relief" Id. This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

**B. This Court Has Subject Matter Jurisdiction Over This Lawsuit.**

1. Plaintiff Is Not Obligated to Prove Her Case At the Pleading Stage. The Second Amended Complaint Contains Sufficient Detail as to the Basis of the Claim.

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a plaintiff plead "a short and plain statement of the claim showing that the pleader is entitled to relief." the Supreme Court has held that Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v Iqbal, 556 US 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), quoting Bell Atlantic Corp v Twombly, 550 US 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 US at 678, citing Twombly, 550 US at 556. This standard on plausibility is "**not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully**." Iqbal, at 678 (emphasis added).

In support of its 12(b) motion, Defendant contends Plaintiff's detailed Second Amended Complaint is still insufficient, and rhetorically asks how Plaintiff knew Life Protect called the first time if she had to call the number back later. (Defendant's Memorandum, p. 8.) Defendant then asserts Plaintiff failed to "answer the question." (Id.) Defendant's argument is misguided. The parties are at the pleading stage, not trial. Plaintiff is not obligated to answer every conceivable

4

"question" Defendant may have. That is what written discovery, depositions and cross-examination are for.[1]

Plaintiff's Second Amended Complaint goes above and beyond the requirements of Fed. R. Civ. P. 8 and easily meets the standards set forth in Twombly and Iqbal. For instance, provides the specific dates and times that Life Protect called her. (Second Amended Complaint, ¶ 17.) Plaintiff describes the details of her interactions with Life Protect and how she ascertained it was in fact Life Protect calling. (Second Amended Complaint, ¶ ¶18-22.) Plaintiff then explains how the calls were disruptive and therefore establish the requisite injury to have standing to assert a TCPA claim. (Second Amended Complaint, ¶ 26.) Nonetheless, Defendant seems to conflate the standards at the pleading stage with the standards of trial and insists that the Second Amended Complaint lacks sufficient details as to how Plaintiff knew Defendant was calling. (Defendant's Memorandum, p. 8-9.) Defendant's interpretation of Federal Rules of Civil Procedure 8 and 12 are misguided.

Again, To the extent Defendant finds insufficient Plaintiff's explanation as to how she arrived at the conclusion she did as to the identity of the caller, Defendant can make that argument on summary judgment[2] or better yet, to the jury as the fact-finder. A dispute of fact is not a basis to dismiss a claim at the pleading stage. *See* Iqbal, at 678; *See* Caldwell v. Freedom Mortg. Corp., Civil Action No. 3:19-CV-2193-N, 2020 U.S. Dist. LEXIS 147456, at *1 (N.D. Tex. Aug. 14, 2020).

---

[1] Surely this is a fair question for Defendant to ask in discovery or on cross examination at trial. It is not necessary that a Plaintiff prove every assertion in her Complaint. (*See* Fed. R. Civ. P. 8.)

[2] *See* Williams v. Lakeview Loan Servicing LLC, No. 4:20-cv-01900, 2020 U.S. Dist. LEXIS 240472, at *7 (S.D. Tex. Dec. 22, 2020) ("This again introduces defensive matters beyond the face of complaint, thus presenting "questions of fact that are better suited in a motion for summary judgment.")

2. <u>The Telephone Consumer Protection Act and its Application Always Have Been and Are Constitutional.</u>

In its Memorandum, Life Protect makes the erroneous argument that application of the TCPA would be unconstitutional from the time of passage of the Bipartisan Budget Act of 2015 through the issuance of the 2020 US Supreme Court's ruling in <u>Barr v. Am. Ass'n of Political Consultants</u>, 140 S. Ct. 2335 (2020).  (*See* Defendant's Memorandum, pp. 9-11.)  In doing so, Defendant misreads the Supreme Court's holding in <u>Barr</u> as though it held the precise opposite of what it did.

In <u>Barr</u>, the US Supreme Court struck down an exemption from TCPA liability that was afforded by the 2015 Bipartisan Budget Act to servicers of federally-guaranteed student loans. *See generally*, <u>Barr</u>.  At the same that the federal-student loan exemption was invalidated, the Supreme Court declined to strike down the entire statute (which was enacted 24 years prior to the 2015 amendment), and instead applied the doctrine of severability and severed the unconstitutional 2015 amendment from the otherwise constitutional 1991 law.  <u>Id</u>.  Regarding severability and how the unconstitutional amendment related to the remainder of the TCPA, the High Court held as follows:

> With the government-debt exception severed, the remainder of the law is capable of functioning independently and thus would be fully operative as a law. **Indeed, the remainder of the robocall restriction did function independently and fully operate as a law for 20-plus years before the government-debt exception was added in 2015.**
>
> ********
>
> The Court's precedents further support severing the 2015 government-debt exception. The Court has long applied severability principles in cases like this one, where Congress added an unconstitutional amendment to a prior law.
>
> *********

6

> Extending the robocall restriction to those robocalls raises no First Amendment problem. So the First Amendment does not tell us which way to cure the unequal treatment in this case. Therefore, we apply traditional severability principles. And as we have explained, severing the 2015 government-debt exception cures the unequal treatment and constitutes the proper result under the Court's traditional severability principles. In short, **the correct result in this case is to sever the 2015 government-debt exception and leave in place the longstanding robocall restriction.**

Barr, 140 S. Ct. 2335, 2353-55 (2020) (emphasis added).

By making the tenuous argument that enforcing the TCPA would effectively be punishment based on "unconstitutional content-based restrictions"[3], Defendant overlooks what the Barr Court actually held. In Barr, the Supreme Court's majority rejected the argument from the American Association of Political Consultants that the TCPA contained unconstitutional content-based restrictions on speech. Rather, the Barr court declined to strike the entire statute and instead severed and then invalidated the unconstitutional *exemption*. *See* Barr, at 2355 ("the correct result in this case is to sever the 2015 government-debt exception and leave in place the longstanding robocall restriction.")

In support of Defendant's position, it cites to the persuasive authority of two out-of-district decisions: Creasy v. Charter Communs., Inc., No. 20-1199, 2020 U.S. Dist. LEXIS 177798 (E.D. La. 2020) and Lidenbaum v. Realgy, LLC, No. 1:19 CV 2862, 2020 U.S. Dist. LEXIS 201572 (N.D. Ohio 2020). While those two district courts clearly applied Barr to hold the opposite of what it did, there are significantly more courts which correctly followed Barr to apply the TCPA to all robo-callers, rather than exempt all robo-callers from the statute.

For instance, in Rieker v National Car Cure, LLC, 3:20-cv-05901 (N.D. Fl. Jan. 5, 2021) (attached as Ex. A), the court rejected an argument virtually identical to that presented by

---

[3] (Defendants' Memorandum, p. 9.)

7

Defendant and instead held the unconstitutional amendment was severed by the High Court while the remainder of the TCPA remained intact: "It is also consistent with the fact that seven justices in AAPC concluded that the entire 1991 robocall resection should not be invalidated." (*See* Ex. A, p. 3.) Likewise, in Abramson v. Fed. Ins. Co., 2020 U.S. Dist. LEXIS 232937, at *3-4 (M.D. Fla. Dec. 11, 2020), the Court rejected an argument similar to that asserted by Defendant in this matter ("Although XenCall cites two cases supporting its arguments, the vast majority of cases this has reviewed conclude that parties may continue to bring claims under the portions of § 227(b) unaltered by AAPC.") *See also* Buchanan v. Sullivan, No. 8:20-CV-301, 2020 U.S. Dist. LEXIS 202519, 2020 WL 6381563, at *3 (D. Neb. Oct. 30, 2020); Schmidt v. AmerAssist A/R Sols. Inc 2020 U.S. Dist. LEXIS 193358, 2020 WL 6135181, at *4 n.2 (D. Ariz. Oct. 19, 2020); Burton v. Fundmerica, Inc., 2020 U.S. Dist. LEXIS 139299, 2020 WL 4504303, at *1 n.2 (D. Neb. Aug. 5, 2020); Salerno v. Credit One Bank, N.A., No. 15-CV-516 (JLS), 2020 U.S. Dist. LEXIS 133636, at *7 (W.D.N.Y. July 28, 2020) (rejecting defendant's request for a stay and noting the Barr court "did not invalidate the TCPA as a whole.")

In Barr, the Supreme Court struck down an unconstitutional amendment inapposite to the facts and parties at issue. That unconstitutional amendment was severed by the Supreme Court while the remainder of the statute stood. Barr did not exempt all robo-callers from the TCPA. In fact, it explicitly did the opposite.

Because Plaintiff's Complaint asserts claims under the TCPA, a federal statute, this Court has subject matter jurisdiction over this case. Here, when the various companies were harassing Terri Pepper, the government-debt exemption was wholly inapposite. Based on the clear and unequivocal language of the Barr majority, the "longstanding robocall restriction" of the TCPA was in effect when Defendant placed automated calls to Ms. Pepper.

## C. Plaintiff's Second Amended Complaint States a Claim Upon Which Relief Can Be Granted.

As articulated above, Plaintiff's Second Amended Complaint contains sufficient detail to meet the requirements of Fed. R. Civ. P. 12(b). (*See* infra Section "B")

In its Memorandum, Defendant makes the perplexing and internally contradictory argument that Plaintiff fails to plead that she received two (2) or more calls in a twelve month period while on the Do Not Call List; yet Defendant concedes that the pleading *does* identify no fewer than five (5) calls. (*See* Defendant's Memorandum, 18-20, 20.) Plaintiff states that she received two (2) or more calls for solicitation purposes within twelve months and therefore meets the requirements under Section 227(c) of the TCPA. (Second Amended Complaint, ¶¶ 12, 17, 27, Count II.)

## D. Plaintiff stated a Viable Claim under §302.101 of the Texas Business & Commerce Code.

Section 302.101 of the Texas Business & Commerce Code prohibits sellers from engaging in telephone solicitation from a location in this state or to a purchaser located in this state unless the seller obtains a registration certificate from the Office of the Secretary of State for the business location from which the solicitation is made.

Plaintiff alleges in the Second Amended Complaint that "Defendant violated § 302.101 of the Texas Business & Commercial Code when its representatives engaged in continuous and repetitive telephone solicitation of Plaintiff without obtaining a registration certificate from the Office of the Secretary of State." (Second Am. Comp. ¶ 41.)

That is a straightforward assertion which must be taken as true under Fed. R. Civ. P. 12(b)(6) at the pleading stage. Plaintiff pleaded in the amended complaint that Defendant made

solicitation calls to Plaintiff's cell phone. Plaintiff will demonstrate this through discovery. Defendant has not provided any basis to short-circuit the process and dismiss this count.

### III. CONCLUSION

For the foregoing reasons, Plaintiff Terri Pepper requests that this Honorable Court deny Defendant Life Protect 24/7 Inc.'s Motion to Dismiss Plaintiff's Second Amended Complaint.

Respectfully submitted,

By: *s/ Amy L. Bennecoff Ginsburg*
Amy L. Bennecoff Ginsburg, Esq.
Kimmel & Silverman, P.C.
30 East Butler Pike
Ambler, PA 19002
Phone: 215-540-8888
Facsimile: 877-788-2864
Email: aginsburg@creditlaw.com

Dated: January 11, 2021

**CERTIFICATE OF SERVICE**

I, Amy L.B. Ginsburg, hereby certify that on January 11, 2021, I served a true and correct copy of the foregoing supplemental statement to the below parties via ECF.

>Christopher M. Jordan
>TX State Bar No. 4087817
>MUNSCH HARDT KOPF &HARR, P.C.
>700 Milam Street, Suite 2700
>Houston, Texas 77002
>Telephone: (713) 222-4015
>Fax: (713) 222-5834
>Email: cjordan@munsch.com
>*Attorneys for Defendant*
>
>BROWNSTEIN HYATT FARBER SCHRECK, LLP
>Matthew C. Arentsen, *pro hac vice pending*
>Jesse D. Sutz, *pro hac vice pending*
>410 17th Street, Suite 2200
>Denver, Colorado 80202
>Phone: 303.223.1100

*/s/ Amy L.B. Ginsburg*